UNITED STATES of America

v.

Thomas W. DORAN, Defendant.

No. 64 Cr. 81.

United States District Court,
S. D. New York.

July 15, 1971.

Whitney North Seymour, Jr., U. S. Atty., S. D. N. Y., for the United States; David V. Keegan, New York City, of counsel.

Shea, Gould, Climenko & Kramer, New York City, for defendant; Jesse Climenko, New York City, of counsel.

## OPINION

FRANKEL, District Judge.

Defendant Thomas W. Doran is charged in a 1964 indictment with conspiring to defraud the Government and with making a false claim for payment in connection with certain contracts for mail carriage over ten years ago. The question before the court is whether this 57-year old defendant's medical problems render him unfit to stand trial.

The evidence bearing on this subject comes from physicians employed or retained by the Veterans Administration. While the court, at the Government's instance, has held an evidentiary hearing, the facts, and, indeed, the medical opinions are in large measure undisputed. The record leads to a reasonably confident judgment that it would be unfair and disproportionately risky to bring this defendant to trial.

Not only is the case old; the problem of defendant's medical incapacity is also old. In March of 1966, when the indictment had already been pending for over two years, defendant suffered a stroke. In December of that year he was examined by two Veterans Administration physicians, a cardiovascular specialist and a neurologist. He was found to have an alarming array of symptoms— hypertension, weakness of the right ex-

tremities, a limp, difficulties of speech and expression, pathological obesity, evidences of a history of gouty arthritis, insomnia, problems of memory, emotional instability and easy fatigability. Both doctors concluded he was unable safely or competently to stand trial. The Government evidently agreed, and the case was left in abeyance for the time being.

In August of 1968, the Government had defendant re-examined. With changes of detail that have no significance, the reports duplicated the earlier findings and conclusions. Neither physician saw reason to expect defendant's condition to change for the better. The cardiovascular specialist found him unfit to stand trial then "or in the foreseeable future." The neurologist expressed the same view.

■ The United States Attorney, his role and responsibilities being what they are, has lately moved that the case be brought on for trial. The medical picture is not notably changed. There has been some surveillance of the defendant while he was driving an automobile (swiftly at that), lifting a package (of some girth, but unknown weight), frequenting both a tavern and a restaurant, and walking about outside his house. The surveillance proves defendant is alive. The medical evidence proves he remains far from well. It also appears defendant has denied any history of serious illness in a motor vehicle license application. This casts doubt upon his veracity. It has prompted communications leading to termination of his career as a licensed driver. But it does not demonstrate that he can be brought fairly or safely to trial.

■ The court concludes from all the evidence that defendant Doran may not be made to stand trial. His physical and mental condition are such that:

(1) he is severely impaired emotionally and intellectually, so that his ability to remember the ancient facts and assist counsel is at best marginal; and

(2) the strain and tension of a trial (estimated to require from two to four weeks) pose a substantial threat of producing a severe cardiovascular accident or death.

The two conditions thus found arise often in the cases as distinct and separate grounds of "incompetency" to stand trial —namely, (1) "mental" inability to comprehend and assist, e. g., Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (per curiam); United States v. Knohl, 379 F.2d 427, 435–436 (2d Cir.), cert. denied, 389 U.S. 973, 88 S.Ct. 472, 19 L.Ed.2d 465 (1967); United States v. Adams, 297 F.Supp. 596 (S.D.N.Y.1969), and (2) "physical" disorders making trial excessively painful or risky, e. g., United States v. Bernstein, 417 F.2d 641, 643–644 (2d Cir. 1969); United States v. Knohl, supra, 379 F.2d at 436–438; United States v. Keegan, 331 F.2d 257, 263–264 (7th Cir.), cert. denied, 379 U.S. 828, 85 S.Ct. 57, 13 L.Ed.2d 37 (1964). It is not extraordinary, of course, that both kinds of impediments should be found to co-exist, as they do here.

It may be noted in this connection that defendant's mental condition is not found to be so impaired as to make him "incompetent" to stand trial on that score alone. His memory is impaired, but not evidently inferior, even as impaired, to that of many defendants, less well endowed to begin with, who are made to stand trial. He has emotional difficulties that would make him less than an ideal client. He takes medication—to tranquillize him and "elevate" his moods—that would enhance these difficulties. But he appears to understand the nature of the charges against him, to remember enough and to communicate adequately to be put to trial if these were the only concerns.

The more compelling factor in the interrelated aspects of the unitary human being before us is the danger that stress will cause him severe trauma and possible death. Nobody has attempted the absurd task of "quantifying" this risk. All seem to agree—the court finds, in

any event—it is "substantial." How "substantial" a risk of this kind should bar trial of a duly returned indictment? The question is a hard one, susceptible of no neat answer usable from case to case, as witness the repeated indications in the books that "discretion" is the key word. E. g., United States v. Schaffer, 433 F.2d 928, 930 (5th Cir. 1970); United States v. Bernstein, *supra*, 417 F.2d at 643–644; United States v. Knohl, *supra*, 379 F.2d at 437–438; United States v. Armone, 363 F.2d 385, 403 (2d Cir.), cert. denied, Viscardi v. United States, 385 U.S. 957, 87 S.Ct. 391, 17 L.Ed.2d 203 (1966).

In exercising the discretion or judgment necessary to such decisions, the trial judge must reckon with a small array of disparate but related things. These include, in this court's view:

(1) Naturally, the medical evidence and judgments.

(2) The related evidence of defendant's activities—at work or play or wherever—outside the courthouse.

(3) The possible availability of measures (e. g., a shortened schedule, medication, medical equipment) to minimize the risks to defendant's health in subjecting him to a trial. Cf. United States v. Sweig, 316 F.Supp. 1148, 1167–68 (S.D.N.Y.1970).

(4) The temporary or permanent character of the physical problem, since postponement is a relatively easy, bearable and obvious measure for the case of curable impairments.

(5) The magnitude and seriousness of the case—i. e., the degree of loss or injury to the public interest deemed to result from delay or total preclusion of a trial.

The last of the foregoing factors, focusing upon the nature of the case, is the most debatable. The parties before us agree that this is a relevant consideration though they disagree as to its significance in this case. Neither counsel nor the court has found explicit precedent on the point. And one of the most distinguished of our colleagues on this court reminds us from time to time that we do not have grades of litigants —that *all* cases in our court are important, and equally so. It may be questioned, moreover, whether the risk to a defendant's life or health ought to have variable importance depending upon things external to himself. On the other side of the balance, however, we have, first, the undeniable fact that some criminal cases are indeed more "important" in patent respects than others. We ought to care more—and we do in fact care more—about resolving charges of large-scale crime or of grave crimes than we do about relatively minor individual cases (however troublesome in their total impact). Similar kinds of familiar value judgments would seem to make it just and rational that some estimate of importance be included among the things considered in deciding whether to bring on for trial a defendant whose health is questionable and arguably threatened by such a course. It is, after all, central in calculations of risk that we take account of the game as well as the candle. For better or worse, this is among the more basic and familiar aspects of governing. The lives we risk for national defense, the safety we trade for freedom, the varying margins we accept for error in lawsuits—all reflect this most elementary and indispensable species of calculus. And so it has seemed, at least to this court, that some weighing of this nature is proper here. This is not to say, obviously, that the "importance" of the case may ever be decisive in itself. It is to say that this is an element among others, none measurable in exact or certain terms, to be taken into account.

Having recorded these reflections for such use as they may have in more difficult cases, the court reiterates the conclusion, stated at the outset, that the defendant before us should not be made to stand trial. He is not extremely aged, but his case is. And he appears to be gravely ill. The chance that a trial may kill him is substantial, even if the odds

undoubtedly would favor his survival. He is so heavily drugged already to keep him functioning from day to day that further medication could not be administered without undue impairment of his capacity to think and attend to his surroundings. The crimes with which he is charged are scarcely trivial, but neither are they singularly momentous. Perhaps, their relative lack of urgency is reflected in the fact that the case was not brought on for trial in the period of over two years between the indictment and defendant's stroke—to say nothing of the (presumably explicable) three years from the events to the indictment and the fact that it is now more than ten years since the alleged wrongs happened.

It seems improbable to the point of being impossible that the circumstances underlying the present determination will change. If anything, time will serve only to make the relevant factors more clearly irreversible. If that may be in some sense regrettable, it is not the less inevitable.

The trial of defendant Doran is postponed without day. So ordered.