495 F.2d 1180
 Harry BERNSTEIN, Petitioner,
v.
Honorable Anthony J. TRAVIA, United States District Judge,
Eastern District of New York, Respondent.
UNITED STATES of America,
v.
Harry BERNSTEIN et al., Defendants.
 No. 1078, Docket 74-1456.
 United States Court of Appeals, Second Circuit.
 Argued April 15, 1974.
Decided April 15, 1974.
 
 Abraham H. Brodsky, New York City, for petitioner.
 Anthony T. Accetta, Asst. U.S. Atty. (Edward John Boyd, V, Acting U.S. Atty., D.N.Y., of counsel), for respondent.
 Before KAUFMAN, Chief Judge, CLARK, Associate Justice,* and SMITH, Circuit Judge.
 IRVING R. KAUFMAN, Chief Judge:
 
 
 1
 Harry Bernstein petitions this Court for a writ of mandamus directing Judge Travia to grant Bernstein, a defendant in a pending criminal action, a severance and a mistrial or, in the alternative, a continuance until he is physically capable of proceeding with his trial.[1] Bernstein and his wife, Rose, are among nine defendants charged in a 65-count indictment with making false statements to the Federal Housing Administration and mortgage insurance applications, and with bribery in connection with those applications. Trial commenced on October 1, 1973, before Judge Travia and a jury, and the Government did not complete its case until March 21, 1974, almost six months later.
 
 
 2
 On March 27, 1974, Bernstein's counsel, Abraham Brodsky, informed Judge Travia that at 5:00 a.m. that morning Bernstein had suffered chest pains, lasting approximately one hour, and that he was then hospitalized. Although Bernstein had suffered a serious coronary thromboses in December 1966, all objective testing after the chest pains on March 27 revealed no additional heart damage.
 
 
 3
 On April 2, at Brodsky's request, Judge Travia telephoned Bernstein's cardiologist, Dr. Charles Poindexter, and spoke to him at length about Bernstein's condition. The following day, Dr. Poindexter confirmed the absence of any incremental damage to the heart in a letter to the judge in which he also stated that Bernstein had experienced symptoms of angina pectoris. Dr. Poindexter concluded his letter with the following prognosis:
 
 
 4
 for (Bernstein) to continue the present trial where he is a defendant and who would probably be exposed to examination and cross-examination . . . (would not be) safe, or wise . . ..
 
 
 5
 In addition to Dr. Poindexter's letter, Judge Travia received a copy of a letter, dated April 3, from Dr. Simon Dack addressed to George Bashian, an Assistant United States Attorney. Dr. Dack, appointed by the court at the instance of the Government, had examined Bernstein stein on April 3 and concluded:
 
 
 6
 From a medical point of view, the procedure would be to keep the patient in the hospital for a few more days and if his condition remains stable, he should be observed at home for at least two more weeks. Ordinarily he would not be allowed to resume normal physical activities or exposure to any stress for at least a month. In view of the patient's history of previous myocardial infarction and a recurrence of unstable angina, I believe that this individual would always be at risk if he were subjected to continued emotional strain that would be required during a court trial. This would be particularly true if he would have to take the witness stand.
 
 
 7
 On April 4, the district court heard argument from Bernstein's counsel for a severance or, in the alternative, a continuance of undertermined duration. The Government, of course, opposed the motion. At that argument Judge Travia inquired of Brodsky if he intended to call Bernstein to testify, to which Brodsky responded that he did not.[2] Judge Travia then ruled that the trial would continue and that Bernstein was to be present on April 9. Thereafter, the trial was adjourned until April 15 for unrelated reasons.
 
 
 8
 One week later, on April 11, another round of arguments on Bernstein's motion was scheduled by the district court, prompted by a second letter from Dr. Poindexter. In this letter, dated April 10, Dr. Poindexter stated his concern over Bernstein's presence at trial in these terms:
 
 
 9
 It till feel that the anxiety and nervous tention created by being in the courtroom and hazarding the outcome of the jury's verdict, even though Mr. Bernstein is not subjected to direct and cross-examination, is very likely to be dangerous and to precipitate another attack of coronary thrombosis, which in turn, may be fatal.
 
 
 10
 After lengthy discussion with counsel, Judge Travia declined to modify his previous denial of Bernstein's motion. During the course of argument, he expressed no fewer than six reasons for this decision: (1) all tests taken following the angina attack proved to be basically negative, (2) some risk of a second coronary would always plague Bernstein, (3) medical assistance could be provided in the courtroom, (4) Bernstein would not be called to testify, (5) the Government's lengthy case had been completed, (6) Bernstein would suffer a great deal of anxiety, in any event, so long as his wife remained on trial. Bernstein's motion for an evidentiary hearing on his medical condition was also denied by Judge Travia.
 
 
 11
 Whether a defendant's physical condition is so poor as to require a continuance or severance is not only a difficult determination for a judge to make, but it is one which carries with it the tremendous responsibility of weighing the invariably unpredictable factor of a defendant's health against the Government's, indeed the public's, legitimate interest in a fair and speedy disposition. Troublesome though it may be, however, that decision, as we have repeatedly held, see e.g. United States v. Bernstein, 417 F.2d 641, 643 (2d Cir. 1969); United States v. Knohl, 379 F.2d 427 (2d Cir.), cert. denied, 389 U.S. 973, 88 S.Ct. 472, 19 L.Ed.2d 465 (1967)[3] is one reserved to the sound discretion of the district Judge. In this instance, the various factors cited by Judge Travia in the course of the April 11 argument amply demonstrate that his decision was not an abuse of discretion. Nor, in our view, would a hearing, at which medical testimony would be adduced, serve any purpose here since there seems to be no dispute over the basic medical facts: only the conclusion to be drawn therefrom is contested. Accordingly, and with the fervent hope that this already overly protracted tria will soon be completed, we deny the petition for mandamus.
 
 
 
 *
 United States Supreme Court, retired, sitting by designation
 
 
 [1]
 Following a 19-day adjournment, Bernstein's trial was set to resume on the morning of April 15, the date we heard argument in this mandamus proceeding. So that there would be no further delay in this jury case, which has been in progress for more than six months, we announced our decision denying Bernstein's petition in open court. We are of the view, however, that the reasons for our action should be set forth more fully
 
 
 [2]
 We note that Brodsky does not claim, in his papers in support of this petition, that his decision not to call Bernstein to testify in his own behalf was in any way influenced by Bernstein's physical condition
 
 
 [3]
 And see United States v. Schaffer, 433 F.2d 928, 930 (5th Cir. 1970)