**UNITED STATES of America, Plaintiff,**

v.

**William H. MOSLEY, Defendant.**

**No. 79–CR–165.**

United States District Court,
N. D. New York.

Oct. 21, 1980.

Richard Grossman, Langan Grossman Kinney & Dwyer, Syracuse, N. Y., for plaintiff.

Kevin E. McCormack, Sp. Atty., U. S. Dept. of Justice, Syracuse, N. Y., for defendant.

## MEMORANDUM–DECISION AND ORDER

McCURN, District Judge.

The Court has before it defendant's motion for dismissal of the indictment and for postponement of trial due to the physical condition of the defendant. It is defendant's contention that the prosecution of him would be "life threatening" due to the state of his health; that his physical condition "does not allow him to go through with the defense of his case and would preclude his assistance in his own defense".

Defendant in support of his motion attaches an affidavit of his attending physician, Dr. Robert J. Agostinelli of Rochester, New York, in which he stated that he had been treating defendant following an aneurysectomy of his abdominal aorta and that he "has had cardiac difficulties". Recently he has noticed some increase in shortness of breath and fatiguability. At the Doctor's suggestion on February 1, 1980, defendant underwent a treadmill test under the supervision of a local cardiologist and the test results were positive for and indicative of moderate, severe two or three vessel coronary artery disease. In his opinion any physical or psychological factors which will stimulate or cause angina will be detrimental to defendant and very possibly induce either angina, cardiac arrhythmia and/or myocardial infarction which would be "life threatening". He opined that psychological stimuli are just as detrimental to defendant as physical factors and will precipitate problems regarding his cardiac status.

Upon oral argument of the motion the Government agreed to and indeed suggested an impartial medical examination and report to the Court. Counsel for defendant readily agreed. At the Court's request, the counsel for Government and defendant jointly designated Dr. Martin Black of Syracuse, as an impartial physician to examine and report.

Dr. Black examined defendant on April 18, 1980, and in his report of April 28, 1980, made a diagnosis of (1) chronic lung disease; (2) possible ischemic heart disease; (3) chronic renal disease–probable nephrosclerosis; (4) peripheral vascular disease; and (5) Status post abdominal aortic aneurysm resection. Although Dr. Black felt his disability was permanent without chance of improvement, he did not feel it would prohibit him from court appearance, but did suggest court sessions not be prolonged and that a physician be in attendance if the same could be arranged.

Thereafter counsel for defendant requested an evidentiary hearing to take the testimony of Drs. Agostinelli and Black and to afford an opportunity for cross–examination of the respective doctors concerning their divergent opinions as to the defendant's ability to stand trial.

At the evidentiary hearing held on May 22, 1980, Dr. Agostinelli, a Board Certified Internist, testified that defendant first visited him in December of 1972 for a routine physical–nothing unusual was found. He next consulted Dr. Agostinelli in May of 1979 when the Doctor found a large abdominal aneurysm and that the defendant suffered from peripheral vascular disease. The aneurysm was surgically removed at Rochester General Hospital in June of 1979. The defendant has had a good and sufficient recovery therefrom with no residuals. In December of 1979, defendant was indict-

ed and on January 24, 1980, a superseding indictment was filed against him. Thereafter on February 1, 1980, on Dr. Agostinelli's referral, defendant Mosley was given a treadmill test at the Rochester Cardio Pulmonary Group. Dr. Prakash N. Pande, a Board Certified Cardiologist, who performed the test noted that defendant Mosley was symptomatic with angina pectoris and had a history of "heart attack and heart failure" in the past. Dr. Pande found a "definitely positive submaximal stress test and . . . widespread distribution of the ST segment abnormalities" which made him "suspect severe 2 or 3 vessel coronary artery disease." Dr. Agostinelli continued to follow the medical progress of Mr. Mosley up to the time of the evidentiary hearing. He testified as to his diagnosis of coronary artery disease with a coronary insufficiency. The condition is permanent. In his opinion a trial may precipitate a coronary event which would be life threatening. The coronary event is a myocardial infarction.

Dr. Black testified at the evidentiary hearing substantially as set forth in his written report to the Court. He opined that Mosley's problems were due mainly to his lung disease. In addition he stated that the ischemic heart disease which defendant Mosley suffered from would not prevent him from testifying at trial. He suggested that his condition could be monitored through the Court regulating trial time and the defendant's appearances and also with medical attendance at trial.

At the conclusion of Dr. Black's testimony, defendant Mosley was put on the stand by his counsel. His attorney, Mr. Grossman, began questioning him about his physical experiences during the prior testimony of Drs. Agostinelli and Black, and shortly after he started questioning him in that regard, Mosley experienced a shortness of breath, evidenced distress and a recess was taken. Dr. Agostinelli examined defendant Mosley during the recess. Dr. Agostinelli was recalled and stated that his examination during the recess revealed that Mosley had a "thready" pulse and that he, Agostinelli, could barely feel it. He stated that Mosley was in shock and expressed pain and

pressure behind his arms and shortness of breath. His pulse was between 48 and 50. He responded to nitroglycerin. It was apparent to Dr. Agostinelli and to the Court that Mosley during his testimony was experiencing some sort of difficulty which did not appear to be feigned.

When Dr. Black, who was not present during Mosley's testimony at the evidentiary hearing, was informed by the Court of the physical episode he had had, Dr. Black suggested further medical examination and the performing of certain noninvasive tests which would aid in confirming whether or not defendant had ischemic heart disease of such severity so as to prevent him from testifying. The Court informed both the Government and defense counsel of same and no objection was made to a further examination by medical experts for the Court's benefit. The Court then designated Dr. Louis A. Wasserman, Associated Internists of Syracuse, P.C., a Board Certified Internist, Board Certified Cardiologist and Fellow of the American College of Cardiology, to conduct the further examination and testing. Dr. Wasserman, on June 30, 1980, performed a complete medical evaluation of William Mosley, Sr. The Doctor reported in his letter to the Court of July 18, 1980, on the basis of the history, physical examination, chest x–ray, office spirometry, resting ECG and routine blood studies that Mosley had the following medical problems:

A. Ischemic heart disease with chronic stable angina.

B. Peripheral vascular disease–primarily involving right lower extremity.

C. Moderate obstructive airway disease.

D. Mild chronic renal failure.

·E. Probable type IV hyperlipoproteinemia with significant elevation of triglyceride level.

He felt it necessary to perform other non–invasive studies to ascertain whether it would be safe for the patient to stand the emotional stress of a court trial in light of his significant medical problems. A MUGA cardiac blood pool scan was obtained. The results of the test led Dr. Wasserman to the

conclusion that Mr. Mosley's left ventricular and right ventricular functions were entirely within normal limits at rest. He then performed a treadmill exercise test with thallium on July 17, 1980. This test was obtained to assess for any significant myocardial ischemia that might occur with physical activity. The exercise thallium suggested significant coronary artery disease in the distribution of the right coronary artery and the left anterior descending artery. In spite of the patient's abnormal studies, he appeared to tolerate the stress of exercise reasonably well. The Doctor stated, "On the basis of all the information I have available to me, it is my professional opinion that Mr. William H. Mosley, Sr., can stand trial. Of all the patient's medical problems mentioned above, the only one pertinent regarding whether this particular individual can stand trial or not is his coronary artery heart disease. From all information I could gather Mr. Mosley's coronary artery heart disease should not prevent him from engaging in mild to moderate activities; and one must consider that a court trial with its attendant emotional stress would be equivalent to moderate physical activity similar and probably less stressful than what the patient experienced during his most recent treadmill exercise test." Dr. Wasserman went on to recommend that a physician be in attendance during the trial for the purpose of administration of any medications that may be necessary. He opined that the mere presence of a physician may help alleviate some of the fears that Mosley has regarding his medical problems and the effect a court trial may have on those medical problems. The defendant's counsel then requested a further evidentiary hearing at which the testimony of Drs. Wasserman and Pande would be taken. This was accomplished with the testimony of Dr. Wasserman being taken on August 18, 1980, and the testimony of Dr. Pande being taken on August 21, 1980. Both doctors were subject to the cross-examination of opposition counsel. Dr. Wasserman testified substantially as set forth in his written report to the Court, i. e., to the effect that the defendant's ischemic heart disease was not of such severity so as to preclude him from standing trial. He was cross-examined extensively by defense counsel as to the emotional stress which Mr. Mosley would be put under in defending himself and as to its comparison to physical stress such as he experienced in the treadmill test. Dr. Wasserman opined that emotional stress in connection with such a condition would not be as dangerous as physical stress and that Mr. Mosley could stand trial without endangering his life. He referred to various studies and medical data gathered by learned authorities which supported his decision that emotional stress is not as life threatening as physical stress in conditions such as Mr. Mosley has. He further stated that in his opinion the upset or physical experience of Mosley which occurred when he took the witness stand at the time of the May evidentiary hearing was not an incident related to coronary insufficiency, but rather a "vasovagal".

Q Was that an incident related to coronary insufficiency?

A I don't think so.

Q What would you describe it as?

A I would describe it as a vasovagal.

Q As a who?

A Vasovagal, that due to psychologic stress, there has been stimulation of the vagus nerve which creates diaphoresis. I would have liked to have seen the blood pressure during that, because that would have helped support whether it was angina. When most people get angina, their blood pressure increases significantly and their pulse increases. What he described was a 40 to 50, I thought I read 40 to 50 in the report. That is unlike angina. Angina increases pulse and increases blood pressure. A vasovagal reaction, a stimulation of the vagus nerve would be more likely to decrease the pulse, make someone faint, make someone lightheaded and diaphoretic. And when I read that in chambers, I was very suspicious that it was not ischemic heart disease, and I was happy to see that the pulse rate was recorded.

Dr. Pande to the contrary testified in detail as to his opinion that the emotional stress of the trial in which the defendant has his liberty at stake would be as great or greater than physical stress and that the same in his opinion would be life threatening to Mr. Mosley. Dr. Pande referred to various medical treatises which he alleged supported his position.

■ The Court has the difficult determination of the factual question as to the ability of defendant Mosley to physically undergo a trial of his guilt or innocence in connection with the charges set forth in the indictment brought by the Grand Jury against him. On one hand we have the testimony of his own physician and of his specialist to the effect that his condition precludes the same and such a trial would be "life threatening". On the other hand the Court has before it the opinion of two Court appointed experts of at least equal qualification who testified that Mosley can stand trial without danger to himself. This Court gives the greater weight to the testimony of the Court appointed experts whose job it is to impartially consider all of the medical evidence and to advise the Court in accordance therewith. Indeed, Dr. Black, the Court's first expert was selected by defense counsel along with the Government's counsel as being eminently qualified to give an opinion.

Under all the circumstances the Court opts to take the testimony of the Court's witnesses rather than those of defendant as more likely to express a neutral view on defendant's condition. The trial can be structured so as to provide defendant with access to medical assistance if he should so desire and as to prevent him from undue or burdensome trial fatigue. The Court, therefore, denies defendant's motion for a continuance of the trial due to the defendant's health conditions.

■ The Court also denies defendant's motion to dismiss the indictment based upon defendant's health condition. No authority for the Court to grant the latter motion can be found in any event. The Court has such discretion where a question of law is involved but where, as here, the question is one of fact, i. e., the defendant's physical ability to stand trial, a dismissal is not proper. *United States v. Miller*, 491 F.2d 638, 647 (5th Cir. 1974). Dismissal of an indictment is not to be granted except in extraordinary circumstances. *See United States v. Fields*, 592 F.2d 638 (2d Cir. 1978); *see also, United States v. Broward*, 594 F.2d 345, 351 (2d Cir. 1979), wherein the Court held, ". . . we emphasize here, we emphasized in *Fields*, that the sanction [of dismissal] is so drastic that, especially where serious criminal conduct is involved, it must be reserved for the truly extreme cases."

The Court also has before it defendant's supplemental motion for discovery which seeks production for defendant's viewing of an alleged Internal Revenue Service Memorandum which sets forth Government criteria and guidelines for criminal prosecution of tax fraud cases and dollar limitations under which prosecution is not maintained by the Government. The defendant alleges knowledge of same was gained through a national network news story on August 4, 1980. Defendant contends that production of this document may lead to discovery of facts upon which defendant can base a motion to dismiss the government's tax evasion indictments against defendant upon the basis of selective prosecution, in violation of the Constitution of the United States.

The Government, in response, acknowledges that such an Internal Revenue Service Memorandum was illegally "leaked" to the press and portions of same were published in several newspapers, but contends that even assuming the sought Memo does set forth guidelines for criminal prosecution of income tax evasion, that defendant has not made the required *prima facie* showing of selective prosecution sufficient to warrant discovery. The Court agrees.

The Courts have set forth a two–pronged test for determining whether the defendant has made a *prima facie* showing of selective prosecution. In *United States v. Berrios*, 501 F.2d 1207, 1211 (2d Cir. 1974), the Court stated this test as follows:

To support a defense of selective or discriminatory prosecution, a defendant bears the heavy burden of establishing, at least *prima facie*, (1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, i. e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights. These two essential elements are sometimes referred to as "intentional and purposeful discrimination".

*See also United States v. Douglass*, 579 F.2d 545, 550 (9th Cir. 1978); *United States v. Bourque*, 541 F.2d 290, 292–93 (1st Cir. 1976).

■ The defendant has not met the minimum showing required by the Court in *Berrios*. Defendant offers no proof that others similarly situated have not been prosecuted for the same type of crime. The defendant here is charged with two counts of filing false income tax returns in violation of 26 U.S.C. § 7206(1). This type of crime is prosecuted on a regular basis in this and all other Federal Judicial Districts. Moreover, the defendant has made no showing that he was selected for prosecution based on some unconstitutional ground such as race, religion or the desire to prohibit the free exercise of the defendant's constitutional rights. The defendant merely asserts that the Government may have selected the defendant for prosecution in contradiction of some internal guideline promulgated by the Internal Revenue Service.

In *United States v. Berrios, supra,* the Second Circuit characterized the attempt of the defendant to secure internal government documents as a "fishing expedition" and held as follows:

> The effect could be to encourage use of the defense of selective prosecution, however baseless, as a means of obtaining discovery to which the defense would not otherwise be entitled. In order to show

what has been described by the Third Circuit as a "colorable basis" entitling the defense to subpoena documentary evidence required to establish a selective prosecution defense, see *United States v. Berrigan*, 482 F.2d at 177, 181, we would first require some evidence tending to show the existence of the essential elements of the defense and that the documents in the Government's possession would indeed be probative of these elements.

This Court had previously by its Memorandum–Decision and Order of April 30, 1980, granted defendant's motion to sever Counts X and XI from the superseding indictment of defendant and for a separate trial thereof. Thereafter the Court by letter dated May 14, 1980, granted the Government's application to reargue. Argument of same has been held in abeyance, with the consent of the Government and the defense, pending this Court's decision on the defendant's motion for a health related dismissal or continuance. That decision having been made herein, the Court orders reargument of the severance motion on October 27, 1980, at 10 a. m. at Syracuse, New York.

IT IS SO ORDERED.