UNITED STATES of America

v.

Eli GOLDSTEIN, et al.

No. 83–6104–CR–OWENS.

United States District Court,
S.D. Florida.

April 10, 1986.

---

James H. Greason, Miami, Fla., E. Ross Zimmerman, Fort Lauderdale, Fla., for plaintiffs.

Barry Goldman, Fort Lauderdale, Fla., Thomas Hamilton, U.S. Dept. of Justice, Washington, D.C., for defendant.

## ORDER

OWENS, Chief Judge.

The defendants in this case were indicted by a grand jury on August 23, 1983. Defendant Goldstein subsequently filed a motion to dismiss the indictment on the ground of ill health. The court directed Dr. Jim C. Hirschman to examine the defendant and to report the findings of his medical evaluation. The court held a hearing on April 19, 1985, and denied the motion. However, the court placed defendant Goldstein's case on "inactive" status.

After the undersigned judge was assigned to preside over this case, the parties were notified that the order placing Goldstein on "inactive" status was under reconsideration by the court. The defendant has submitted additional information from his treating physicians, and a hearing on the motion was held on March 11, 1986.

### Findings of Fact

1. Defendant Goldstein had a major myocardial infarction (heart attack) in September, 1971.

2. He had a second heart attack in June, 1979.

3. There is no doubt that defendant Goldstein suffers from coronary heart disease.

4. However, he had his first heart attack *prior to* the dates on which the alleged crimes occurred. He thus was suffering from heart disease when the alleged crimes took place.

5. Defendant Goldstein's physicians have advised him to undergo cardiac catheterization, which is a procedure to determine more accurately the extent of his heart disease. However, he refuses to undergo the procedure.

6. The court-appointed physician who examined Goldstein (Dr. Hirschman) opined that: "It is my opinion that Eli Goldstein with his coronary artery disease and his significant impairment from this disease his [sic] at risk from sudden heart attack and even sudden death. This may occur without him going to trial and I do believe that going to trial will add *some* increased degree of risk to him regarding acute illness." (Emphasis added.)

7. Two physicians testified at the March 11, 1986, hearing: Dr. Martin G. Bloom and Dr. Louis Witonsky.

8. Dr. Bloom testified that it was possible that Goldstein's participation in a criminal trial would result in further damage to his heart, but it was also possible that it

might not cause further damage. Transcript of hearing held March 11, 1986, at 30. Dr. Witonsky testified that stress of any kind, including stress caused by a criminal trial, is a threat to Goldstein's health. *Id.* at 38, 41–42.

9. Virginia Cataldo, a United States Probation Officer, testified that she met with defendant Goldstein on three occasions in December, 1985, and January, 1986, concerning the case. She further testified that he was alert and able to communicate intelligently during the meetings.

10. As the United States pointed out, being indicted and arrested did not cause Goldstein to become ill.

11. During the hearing held March 11, 1986, and during the plea hearing held December 9, 1985, Goldstein listened to the testimony, was attentive, and frequently whispered statements to his attorney. On the stand, he responded to the questions in an intelligent manner.

### Conclusions of Law

The issue in this case is whether a district court has the authority to allow a defendant who was ill at the time he allegedly committed the offenses to avoid prosecution on the ground of his bad health, when the defendant refuses to undergo further medical procedures that could improve his health.

Congress has set forth the time limits in which a defendant in a criminal case must be tried. 18 U.S.C.A. § 3161 (West 1985). This statute is mandatory by its terms: A criminal defendant must be tried within 80 days from the date of his arraignment, unless one of the statutory exceptions applies.[1] *Id.* The defendant contends that this court has the inherent authority to supersede Congress' mandate. He contends that the court can dismiss the entire indictment against him on account of his poor health.

The only appellate court decision on point is *United States v. Hudson,* 545 F.2d 724 (10th Cir.1976). The Tenth Circuit stated the issue in that case as being "whether the court can validly dismiss an indictment on its own motion based primarily on the defendant's poor physical health." *Id.* The court held that the district court's dismissal of the indictment was reversible error. The *Hudson* court stressed the United States Attorney's discretion to dismiss indictments.

The defendant in *United States v. Mosley,* 500 F.Supp. 601 (N.D.N.Y.1980), also contended that his prosecution "would be 'life threatening due to the state of his health'; [and] that his physical condition 'does not allow him to go through with the defense of his case and would preclude his assistance in his own defense.'" The court, however, denied his motion to dismiss the indictment based upon defendant's health condition. The court stated that it could find no authority for granting the motion, and that dismissal of the indictment would be improper. *Id.* at 605.

It is thus clear that this court does not have the authority to dismiss defendant Goldstein's indictment. Furthermore, even if the court did possess that authority, the court would decline to dismiss the indictment in this case.

### Continuance

In the alternative, defendant Goldstein asks the court to grant a continuance. Defendant relies primarily upon *United States v. Doran,* 328 F.Supp. 1261 (S.D.N.Y.1971), in support of his request. The *Doran* court set forth five factors that a court should consider in deciding whether to grant a continuance:

(1) the medical evidence;

(2) the related evidence of defendant's activities outside the courthouse;

---

**1.** The delay resulting from a proceeding to determine the physical capacity of the defendant and the delay resulting from the fact that a defendant is physically unable to stand trial are excludable under the Speedy Trial Act. 18 U.S.C.A. §§ 3161(h)(1)(A) and 3161(h)(4) (West 1985).

(3) the availability of measures to minimize the risks to defendant's health in subjecting him to a trial;

(4) the temporary or permanent character of the physical problem; and

(5) the magnitude and seriousness of the case. *Id.* at 1263. *See also United States v. Passman,* 455 F.Supp. 794, 797 (D.C.D.C. 1978).

■ *Medical evidence* —Applying these factors to the present case, the court notes, first, that the medical evidence is uncontradicted. Defendant Goldstein suffers from coronary artery disease and diabetes, and there will be "some increased risk" of further heart problems if his case goes to trial. However, it is also clear that he suffered from these ailments at the time he allegedly committed the crimes charged in the indictment.

*Outside activities*—Regarding Goldstein's activities outside the courtroom, Goldstein testified that he rarely left his home and that he spent most of his time reading and watching television.

*Minimization of risks* —The court has advised both defendants that every reasonable accommodation will be made at trial to minimize the defendant's physical discomfort. The trial can be conducted during shorter working days; the court will allow frequent breaks; the defendants may freely leave and return to the courtroom; a separate room equipped with a closed circuit television showing the trial can be provided; and the defendants may tape record the trial for immediate playback to avoid the expense of a daily transcript. The court will consider any other reasonable suggestions for accommodating the defendants.

*Permanent v. temporary* —Defendant's physical problem is permanent. Two physicians state that Goldstein's coronary condition might be improved if he were to undergo additional tests (such as a cardiac catheterization); however, Goldstein flatly refuses to try to improve his health. If his condition were a temporary and curable one, the court would probably grant a con-tinuance. However, due to Goldstein's refusal to undergo additional procedures, his condition is not a temporary one.

*Seriousness of the crimes* —Goldstein and his co-defendant Stein are charged in a thirty-three count indictment. Counts 1 through 9 charge them with using wire communications in interstate commerce to execute a scheme to defraud several suppliers of steel, and to obtain money by means of false and fraudulent pretenses, in violation of 18 U.S.C. §§ 1343 and 2. Counts 10 through 25 charge the defendants with using the mails to execute a scheme to defraud steel suppliers and to obtain money by means of false and fraudulent pretenses in violation of 18 U.S.C. §§ 1341 and 2. Count 26 charges the defendants with conspiring to commit both mail and wire fraud in violation of 18 U.S.C. § 371. Counts 27 through 30 pertain to defendant Stein. Count 31 charges that Goldstein stated that he and his wife's income for 1978 was $95,883 when in fact their income was $290,549. Count 32 charges Goldstein with reporting their income for 1979 as $5,884 when in fact their income was $290,946. Finally, count 33 alleges that Goldstein reported their income for 1980 as $19,911 when in fact their income was $236,803.

■ Goldstein is thus charged in 29 counts of the indictment. The offenses with which he is charged are serious ones. The fact that there are victims of the crimes should also be considered.

### Conclusion

After applying the *Doran* factors to the facts in the present case, it is clear that a continuance is not warranted. Furthermore, this court does not have the authority to dismiss the indictment on the ground that the defendant is physically unable to stand trial. Accordingly, defendant Goldstein's motion to dismiss indictment and motion for a continuance are DENIED.

Defendant Stein has been diagnosed as having cancer of the bladder and is presently undergoing treatment. The probation office is monitoring his condition on a

daily basis. It appears that Stein will be able to go to trial in June or July. The trial of both defendants will be held at that time. The clerk's office will notify the defendants when a definite trial date is set.[2]

---

**2.** This period of time is excluded under the Speedy Trial Act. 18 U.S.C.A. §§ 3161(h)(1)(A) and 3161(h)(4) (West 1985).