**UNITED STATES of America, Plaintiff,**

v.

**David A. JONES, a/k/a Captain Davy Jones, Defendant.**

**Nos. 94–CR–143, 94–CR–341.**

United States District Court, N.D. New York.

Feb. 22, 1995.

Martin, Martin & Woodard (Donald J. Martin, of counsel), Syracuse, NY, for defendant.

Thomas J. Maroney, U.S. Atty., N.D.N.Y. (Elizabeth S. Riker, Asst. U.S. Atty., of counsel), Syracuse, NY, for plaintiff.

## MEMORANDUM–DECISION AND ORDER

MUNSON, Senior District Judge.

## I. BACKGROUND

In an indictment dated April 20, 1994, defendant David A. Jones is charged with three counts of wire fraud in violation of 18 U.S.C. §§ 1342 and 1343, and ten counts of money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and (b)(2) (Case Number 94–CR–143). In a separate indictment dated September 30, 1994, defendant is charged with two counts of perjury in violation of 18 U.S.C. § 1623 (Case Number 94–CR–341). Presently before the court is defendant's motion for a continuance on the basis that he is physically incompetent to stand trial at this time[1]. The issue of defendant's competence

---

1. The court notes that defendant did not expressly state whether he was seeking a continuance or dismissal of the indictments. However, the court treats the instant motions as one for a continuance, because, while it has discretion to order a continuance based upon defendant's physical in-

was first raised in defendant's motion for an order appointing an impartial physician to determine whether he is physically competent to stand trial. Defendant's Notice of Motion, Document ("Doc.") 45 in Case Number 94–CR–143, Doc. 13 in Case Number 94–CR–341. In his motion, defendant submitted the affidavit of Karl F. Gauss, M.D., who is treating defendant for a "variety of medical problems" including heart disease and diabetes mellitus. Dr. Gauss opined that defendant is "at a substantial risk of developing a heart attack were he to immediately undergo the physical and emotional exertion associated with a trial projected to last two weeks." Affidavit ("Aff.") of Karl F. Gauss, M.D., attached to Defendant's Notice of Motion, Doc. 45 in Case Number 94–CR–143, Doc. 13 in Case Number 341. Based upon the initial showing that defendant may not be physically competent to stand trial, the government consented to the application for a court-appointed physician. Thus, by Order dated January 27, 1995, the court appointed Stephen D. Nash, M.D., to conduct a physical examination of defendant to determine whether he is able to stand trial without posing a substantial danger to his life or health. Order, Doc. 47 in Case Number 94–CR–143, Doc. 14 in Case Number 94–CR–341. After conducting an examination of defendant, Dr. Nash stated in a written report to the court that he does "not believe that [defendant] has a substantially increased risk of myocardial infarction from sitting in a courtroom" and that "the risk of myocardial infarction, while certainly real, is not substantially increased by [defendant] standing trial." Letter Dated January 31, 1995, Doc. 59 in Case Number 94–CR–143, Doc. 19 in Case Number 94–CR–341.

To resolve the apparent conflict between these medical opinions, the court conducted a hearing on February 13, 1995, at Syracuse, New York, at which it heard testimony from defendant, Dr. Nash, Dr. Gauss, and John N. Burgess, M.D., a friend of defendant. After careful consideration of the testimony pre-

sented at the hearing, the medical reports submitted by doctors Nash and Gauss, and the court's own observations of defendant during the hearing, the court finds that defendant is physically competent to stand trial at the present time.

## II. DISCUSSION

■ The court begins its analysis by noting that while there exists a statutory basis to make a determination with regard to *mental* competency to stand trial, 18 U.S.C. § 4241, the court is unable to locate, despite much effort, any statutory basis to make a determination with regard to *physical* competency to stand trial. However, the Second Circuit has long held that the granting or denying of a motion for continuance or severance on the ground that the accused is physically incompetent to stand trial falls within the sound discretion of the trial court. *United States v. Gambino,* 809 F.Supp. 1061, 1077 (S.D.N.Y.1992) (physical incompetency unwarranted); *Bernstein v. Travia,* 495 F.2d 1180, 1182 (2d Cir.1974) (physical incompetency unwarranted); *United States v. Knohl,* 379 F.2d 427, 437 (2d Cir.1967), *cert. denied,* 389 U.S. 973, 88 S.Ct. 472, 19 L.Ed.2d 465 (1967) (mental and physical incompetency unwarranted); *United States v. Bernstein,* 417 F.2d 641, 643 (2d Cir.1969) (physical incompetency unwarranted). In *United States v. Doran,* the court set forth five factors to consider in determining whether a defendant's physical condition makes him unable to stand trial:

1. medical evidence;
2. defendant's activities outside the courthouse;
3. measures to minimize the risks to defendant's health;
4. usefulness of delay; and
5. seriousness of the case.

328 F.Supp. 1261, 1263 (S.D.N.Y.1971) [2].

Like other courts, this court adopts the approach taken in *Doran* in determining a de-

competency, the court does not have discretion to dismiss the indictment. *United States v. Mosley,* 500 F.Supp. 601, 605 (N.D.N.Y.1980) (McCurn, J.) ("The Court has [discretion to dismiss an indictment] where a question of law is

involved but where, as here, the question is one of fact, i.e., the defendant's physical ability to stand trial, a dismissal is not proper.").

2. The provisions for mental incompetency provided in 18 U.S.C. § 4241 are not applicable to

fendant's physical competency to stand trial. See, e.g., Gambino, 809 F.Supp. at 1076–79.

## A. Medical Evidence

Defendant is an obese 76 year old male who suffers from severe coronary artery disease and diabetes. Since March 1992, Dr. Gauss, a Board Certified internist, has treated defendant for these conditions. In his affidavit, Dr. Gauss opines that defendant is "at substantial risk of developing a heart attack were he to immediately undergo the physical and emotional exertion associated with a trial projected to last two weeks." In addition, Dr. Gauss states that he is changing defendant's "drug therapy regime in an attempt to decrease his heart failure and increase his functional reserve." Aff. of Karl F. Gauss, M.D., attached to Defendant's Notice of Motion, Doc. 45 in Case Number 94–CR–143, Doc. 13 in Case Number 341. Dr. Gauss testified that defendant's condition has deteriorated in the last five months and that he has "grave concerns" regarding the emotional stress defendant may experience during the trial. The effects of the emotional stress on defendant, combined with defendant's deteriorating condition, could result in defendant experiencing unstable angina and arrhythmia, resulting in death.

Dr. Nash is a Board Certified cardiologist appointed by the court to conduct an impartial evaluation of defendant. His opinion as to defendant's fitness to stand trial is based on copies of defendant's medical records, Doc. 57 in Case Number 94–CR–143, Doc. 17 in Case Number 94–CR–341, as well as an independent physical examination of defendant. In his written report to the court, Dr. Nash concluded that defendant "clearly has severe coronary artery disease," has a "history of arrhythmias," suffers from episodes of syncope, may have suffered "an inferior wall myocardial infarction [i.e., heart attack]" and is "certainly at high risk for the development of a variety of cardiovascular complications." Defendant is also "at substantially increased risk of sudden death" and is predisposed to "bouts of congestive heart failure." Letter Dated January 31, 1995, Doc. 59 in Case Number 94–CR–143, Doc. 19 in Case Number 94–CR–341.

However, directly responding to the question whether defendant is able to stand trial, Dr. Nash concluded:

I do not believe that [defendant] has a substantially increased risk of myocardial infarction from sitting in a courtroom. While he certainly is at increased risk of myocardial infarction because of his underlying disease, I am not convinced that the stress of sitting and listening to testimony will greatly increase his risk of myocardial infarction; however, the other problems that I have described, namely, unstable angina, congestive heart failure and precipitation of arrhythmias, could occur while listening to stressful testimony. Each of these problems could certainly occur with or without a trial setting.

To briefly summarize the above, this gentleman is clearly at increased risk for a variety of cardiovascular problems. This risk may be increased through the stress of testimony and/or cross-examination. I believe the risk of acute myocardial infarction is not substantially increased, however. I believe the risk of myocardial infarction, while certainly real, is not substantially increased by this gentleman standing trial.

Letter Dated January 31, 1995, Doc. 59 in Case Number 94–CR–143, Doc. 19 in Case Number 94–CR–341.

Dr. Nash's lucid testimony is consistent with the findings in his written report. There is agreement in the diagnoses provided by doctors Gauss and Nash. The doctors disagree, principally, in their conclusions as to defendant's prognosis and fitness to stand trial. Dr. Gauss believes that forcing defendant to stand trial would create a substantially increased risk of a myocardial infarction. Dr. Nash testified that while a stressful situation, such as sitting through a trial, can

---

physical competency hearings, United States v. Knohl, 379 F.2d 427, 436 (2d Cir.1967) ("A motion for continuance based on a claim of physical disability does not come within 18 U.S.C. § 4244 [the predecessor to § 4241] or the procedures therein prescribed."), and defendant has not asked the court to make a determination as to defendant's mental competence to stand trial.

increase the risk of a myocardial infarction, that risk, while difficult to quantify, is not substantially increased. In addition, Dr. Nash testified that the length of the trial is not significant in determining the increase in stress caused by the trial. Further, Dr. Nash testified that it is unlikely defendant's condition will improve if the trial is postponed and defendant were to undergo a new regimen of treatment.

■ The court is faced with the difficult task of weighing the testimony of two highly qualified physicians. The difficulty of the task is compounded by the very nature of the question that it is asked to decide: whether requiring defendant to undergo a trial will create a substantial risk to his life or health. In considering the evidence, however, the court gives greater weight to the testimony of Dr. Nash. In so doing, the court is mindful of the competent testimony provided by defendant's expert, an internist, who is very familiar with defendant's physical condition as his physician for nearly three years. On the other hand, Dr. Nash is a highly qualified cardiologist, and as a court appointed expert is in a better position to render an impartial opinion. Thus, the court finds that the medical evidence supports the conclusion that defendant is at a substantial risk of a heart attack, but this risk is not substantially increased by standing trial.

### B. Defendant's Activities Outside the Courthouse

The court does not find this factor to be very helpful in its determination of defendant's physical competency to stand trial. Defendant argues that his health has dramatically deteriorated to the point where his ability to conduct simple tasks is severely compromised. For example, he is unable to sweep snow or walk up steps without experiencing difficulty in breathing. Defendant has stopped walking outdoors and spends a large portion of his day resting in a reclining chair and watching television. Of special significance, the defendant points to several incidents during which he lost consciousness, once while sitting in a barber's chair and on several occasions while sitting at home. Dr. Burgess, a friend of the defendant for about 15 years, witnessed defendant lose consciousness three times on Thanksgiving day in 1993. On the other hand, the Government notes that defendant is still able to drive an automobile, albeit with some difficulty, and that as recently as the Spring of 1994, defendant made an out-of-state trip to attend an auto race. In April 1994, the court held a hearing to determine whether to allow the defendant, who had been released on bail pending a trial in the instant matter, to leave the state to attend the race. The Government points to defendant's voluntary testimony at that hearing, as well as at the instant hearing, as evidence of his fitness to stand trial at the present time.

### C. Measures to Minimize the Risks

The third factor for the court to consider is the potential to minimize the risks to defendant's health in subjecting him to a potentially lengthy trial. Dr. Nash testified that he was not aware of any medical measures that could be taken to reduce the risk to defendant's health. However, the court notes that some steps can be taken to ameliorate the amount of stress on defendant caused by a lengthy trial, such as reducing the length of the court day or week, and tailoring recesses in length and frequency. *See United States v. Sweig*, 316 F.Supp. 1148, 1167–68 (S.D.N.Y.1970) (providing examples of steps to minimize the risk to a defendant's health during the trial).

### D. Usefulness of Postponement

■ The court is unable to find that a postponement of the trial will minimize the risk to defendant's health. While it is possible that defendant's health may improve enough to allow him to stand trial without any substantial risk to his life or health, such improvement is unlikely. The more likely scenario is that defendant's health will continue to deteriorate. Dr. Gauss testified that a change in defendant's drug therapy could decrease angina episodes, but would unlikely effect the risk of arrhythmia or improve the overall function of defendant's heart. Dr. Nash testified that it is not highly likely that defendant's heart condition will improve. Thus, defendant's deteriorating condition ac-

tually weighs against postponing the trial. *See Gambino,* 809 F.Supp. at 1078; *United States v. DePalma,* 466 F.Supp. 920, 926 (S.D.N.Y.1979) (to grant a medical severance motion "would be to effectively deny the Government a trial of these defendants, who may never be more capable of standing trial").

*E. Seriousness of the Case*

 When a court examines "the degree of loss or injury to the public interest deemed to result from delay or total preclusion of a trial," *Doran,* 328 F.Supp. at 1263, the court is in essence "weighing the invariably unpredictable factor of a defendant's health against the Government's, indeed the public's, legitimate interest in a fair and speedy disposition." *Bernstein v. Travia,* 495 F.2d at 1182 (citations omitted). In *Doran,* the court noted that "some criminal cases are indeed more 'important' in patent respects than others. We ought to care more—and we do in fact care more—about resolving charges of large-scale crime or of grave crimes than we do about relatively minor individual cases (however troublesome in their total impact)." *Doran,* 328 F.Supp. at 1263. Thus, in *Gambino,* the court found that the public had a strong interest in avoiding any postponement of the trial because of the magnitude of the charges that alleged "various acts of racketeering including distribution of narcotics, murder, extortion, loan-sharking, and illegal gambling." *Gambino,* 809 F.Supp. at 1079. By way of comparison, it is not as clear in the instant case that the gravity of the charges weighs against any delay in the trial. While the public interest in justice is much clearer in a situation such as that posed in *Gambino,* the crimes with which defendant is charged in the instant matter do not suffer from such diminished importance as to preclude weighing in favor of speedy justice. The defendant is charged with numerous counts of wire fraud, money laundering and perjury. The court is unwilling to say that the level of seriousness of these crimes, and the public interest in justice, is of such little significance as to support defendant's argument to delay the trial. Rather, the seriousness of the crimes charged in the instant matter supports the view that the trial should not be delayed by the condition of defendant's physical health.

## III. CONCLUSION

 In conclusion, after careful consideration of the evidence, both testimonial and documentary, including first-hand observations of defendant's testimony, the court finds that defendant is physically competent to stand trial at the present time. Therefore, defendant's motion for a continuance is denied and the parties are directed to prepare for trial. However, the court notes that defendant may renew its motion for continuance if his physical condition substantially deteriorates. In addition, the court will entertain any suggestions the parties may have to ameliorate the risks to defendant's health at trial, consistent with the court's opinion.

It is so ORDERED.