OPINION OF THE COURT
Lawrence J. Finnegan, Jr., J.
Defendant was indicted on October 24, 1995 for one count of grand larceny in the second degree. It is alleged that defendant, as an attorney, stole more than $50,000 from one client. Additionally there are at least 14 other theft complaints that *535 have been filed against defendant on behalf of additional clients.
On December 23, 1996 bail was set and defendant was incarcerated. Justice Charles A. Thomas made findings and observations that the
"defendant violated Appellate Division rules by practicing as an attorney while suspended and in addition committed a felony * * * Defendant has been out on ROR for the purpose of collecting money ostensibly to make restitution * * * I have been assured on a previous occasion that a plea was imminent, a plea was imminent which means that the likelihood of conviction is very strong if the defendant stands before the Court in open court and tells me that he wishes to plead guilty.
"I believe the evidence is substantial against this defendant, otherwise defense counsel would not be making such representations to the Court. Accordingly, I believe now that defendant has spent one year ostensibly collecting monies there’s a substantial risk of flight, he has a reason, he has the motive. And I will not give him the opportunity not to be present for his case.”
Since that time defendant has claimed that his physical condition has prevented him from appearing in court for the trial of this matter. The People have contended that defendant is malingering. Defendant requested a hearing on the matter on January 10, 1997. The hearing was held at Bellevue Hospital Center on June 26, 1997.
Dr. Douglas Allen testified for the prosecution and the defendant called Dr. Hanno Muellner. Both physicians had had an opportunity to review defendant’s extensive medical records from Kings County Hospital, Montefiore Medical Center-Rikers Island Health Services, Elmhurst Hospital Center and Bellevue Hospital Center. The court credits the testimony of both witnesses in all relevant and pertinent aspects.
Dr. Allen, a cardiologist, testified that he had reviewed defendant’s medical records, had spoken with the treating physicians and other medical personnel and had examined defendant. The doctor explained that although defendant had coronary disease and had had a prior coronary bypass surgery, his current complaints were subjective and not substantiated by physical examination or personal observation. He stated that he was of the medical opinion that defendant could appear in court and tolerate trial proceedings.
Dr. Muellner is defendant’s treating physician at Bellevue. He consulted with defendant regarding his medical condition *536 during the hearing, when defendant complained of a medical problem. Thereafter the hearing continued. The doctor testified that defendant had been referred to the hospital for evaluation of severe hypertension, renal artery stenosis and renal hypertension. Medical testing indicated that there was a blockage in the artery to defendant’s right kidney that resulted in elevated blood pressure. However, defendant refused an angiogram and possible angioplasty which was described by the doctor as a very safe procedure that would clear the blockage and improve his condition. Defendant claimed to be allergic to the dye used in the procedure but the physician testified that any possible allergic reaction would be prevented by pretreatment.
Therefore, at this point defendant’s hypertension is being treated by a combination of medicines which substantially decrease any risk that he would encounter by going to trial. The defendant’s doctor’s opinion was that, with a reasonable degree of medical certainty, defendant’s medical condition does not prevent him from participating in his trial.
CPL article 730 establishes the manner in which a defendant may be found incompetent to stand trial based upon his or her mental condition. The burden of proof is on the People to prove a defendant’s competency by a fair preponderance of the credible evidence (People v Childress, 177 AD2d 498). There is no corresponding provision of the law when a defendant claims that his physical condition prevents him from attending trial.
Several Federal courts have examined the issue. Those decisions have discussed the procedure for a trial court to utilize in determining whether an impending trial would pose a "substantial danger” to a defendant’s life or health (United States v Gigante, 1996 WL 497050 [ED NY, Aug. 28, 1996, Nickerson, J.]). The court is faced with weighing the invariably unpredictable factor of a defendant’s health against the public’s legitimate interest in a fair and speedy disposition (see, United States v Jones, 876 F Supp 395). To grant an indefinite continuance could effectively deny the government a trial of a defendant never more capable of standing trial than under the present circumstances (United States v DePalma, 466 F Supp 920).
The five guidelines used by the courts were originally established in United States v Doran (328 F Supp 1261) and consider (1) medical evidence; (2) defendant’s activities "outside the courthouse”; (3) the availability of measures to minimize the risks to his health; (4) the character of the impairment and its expected duration; and, finally, (5) the magnitude or serious *537 ness of the case (United States v Gambino, 809 F Supp 1061, 1077, citing United States v Doran, supra.).
Medical Evidence
The first factor this court will consider is the testimony of the two physicians at the hearing and a review of the voluminous medical documents in evidence at the hearing. Defendant suffers from hypertension that is controlled to a degree by medication. He has refused a medical procedure that is considered safe and effective which would substantially improve his condition. Both doctors concluded that defendant was physically capable of participating in the trial of this indictment. His current medication regime, while not placing defendant’s condition in complete remission, is able to control it.
The two doctors testified that a trial at this time with defendant’s current medical condition would not subject him to a substantial additional risk of medical problems.
Activities Outside Courtroom
The court finds that prior to incarceration and also during the instant hearing defendant has led an active and undoubtedly stressful existence. Justice Thomas found that during the pendency of this indictment, while on bail with his license to practice law suspended, defendant engaged in the illegal practice of law in real estate matters which necessitated the handling of client funds. He was also amassing monies from assets claiming that they were to be used to make restitution to the complainants and for any subsequent claims.
Additionally, this court notes that during the hearing on this matter defendant actively participated with his counsel in formulating questions for the witnesses. Indeed, during discussions after the hearing, defendant made numerous suggestions and demands through counsel and vigorously participated in all matters relating to the terms of any disposition of the matter.
Measures to Minimize Health Risks
The courts in the reported decisions have considered the various measures that can be taken by the trial court to minimize any of the established risks that defendant might face during a trial. The court notes that the Department of Correction is able to handle varied situations when transporting prisoners especially when notified of the special needs of a *538 given individual. Any number of measures can be taken to minimize the conditions of a trial, such as a shortened day or week or specific rest periods or special transportation, all of which may well be unnecessary in light of the defendant’s own doctor’s observation of "cerebral reasons” at play in Mr. Lu-bash’s subjective medical claims. The details of such measures can be left to the sound discretion of the Trial Judge if and when the need may arise.
Character of the Impairment
Without the medical procedure that defendant has refused, his medical condition seems unlikely to improve. His refusal to cooperate in treatment necessary to improve his condition undermines his argument that he is incapable of withstanding a trial.
Seriousness of the Case
Where an attorney is charged with the theft of a substantial amount of money placed in his care, the public’s interest in a speedy disposition of the matter is clear. The legal system has a public mandate to ensure that those persons who fail to practice law within ethical standards are held to answer for their intentional frauds perpetrated against the public in a timely manner.
The evidence clearly demonstrates by more than a fair preponderance, in fact by clear and convincing evidence, that there are no medical limits on the physical activities of the defendant that would warrant his failure to appear in court.
It is ordered that the defendant shall appear on all future scheduled dates and times with force orders to produce as needed.