UNITED STATES of America

v.

William LAMORTE, a/k/a "Bunky," et al., Defendants.

No. 89 Cr. 742 (DNE).

United States District Court, S.D. New York.

Sept. 11, 1990.

Otto G. Obermaier, U.S. Atty., S.D.N.Y. (Martin Klotz, Theodore E. Chervin, Asst. U.S. Attys., of counsel), for U.S.

Hoffman & Pollok, New York City (Charles L. Weintraub, Jeffrey Hoffman, of counsel), for William LaMorte.

## OPINION & ORDER

EDELSTEIN, District Judge:

Defendant William LaMorte moves this Court to suppress evidence seized at his home during a search executed on July 20, 1988, and for a bill of particulars. For reasons to be discussed, LaMorte's motion is denied in all respects.

### I. Facts

Indictment 89 Cr. 742 charged defendant William LaMorte with conspiracy to import marijuana, conspiracy to import heroin, operating a continuing criminal enterprise, and forfeiture of properties owned by LaMorte. At approximately 12:20 p.m. on July 20, 1988, Magistrate Arthur H. Latimer of the United States District Court for the District of Connecticut (the "magis-trate") issued a warrant to search William LaMorte's residence at 49 Vineyard Lane, Greenwich, Connecticut (the "premises"), for "books, records, passports, receipts, notes, ledgers, address and telephone books, letters and other correspondence, and other papers" relating to the importation and distribution of marijuana and hashish (the "warrant").

The magistrate issued the search warrant based on an affidavit sworn to by Special Agent Mark J. Nelson of the Drug Enforcement Administration (the "affidavit"). The affidavit was drafted by Assistant United States Attorney Peter Ball. The affidavit was compiled from multiple confidential informants, including LaMorte's brother, and other sources of information. LaMorte was also named in an indictment filed in the United States District Court for the Northern District of California (the "California indictment"), and a complaint filed in the United States District Court for the Eastern District of New York (the "Eastern District complaint") charging him with conspiracy to import marijuana and hashish between 1971 and 1984. The affidavit attached and incorporated by reference the California Indictment and the Eastern District complaint.

The July 20, 1988 search of LaMorte's premises uncovered books and records relating to drug importation activities. In addition, the agents discovered $68,000 in currency, four glassine envelopes of heroin, a scale, photograph albums, and other items (the "additional items"). These additional items were not seized during the search. Instead, an additional warrant covering these items was applied for and issued by the magistrate at approximately 6:15 p.m. on July 20, 1988 (the "second warrant"). LaMorte was arrested at approximately 6:45 p.m. on July 20, 1988.

The Court held a hearing on the instant motion on July 9, 1990 (the "hearing"). At the hearing the Court heard the testimony of Special Agent Michael Agrifolio of the Drug Enforcement Administration, the case agent for the instant investigation. Special Agent Agrifolio participated in the

search. The Court found his testimony credible.

## II. Discussion

LaMorte argues that the evidence uncovered during the search should be suppressed since there was no probable cause to issue the warrant. LaMorte next argues that the information in the affidavit did not sufficiently connect the premises to the evidence sought. LaMorte further argues that the additional items should be suppressed as outside the scope of the warrant. Finally, LaMorte contends that this search is not protected by the good faith exception set out in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1983). Each of these arguments is without merit and must be dismissed.

### A. Probable Cause

█ LaMorte contends that there was no probable cause to issue the search warrant since the information contained in the affidavit was "stale." LaMorte argues that the affidavit of Special Agent Nelson was sworn to and submitted to the magistrate on July 20, 1988, but the last criminal act LaMorte was alleged to have participated in occurred in 1984. LaMorte concludes that the three and one-half year old information in the affidavit was an insufficient basis for the magistrate to make a determination of probable cause.

█ In this circuit, staleness is dependent upon (1) the age of the supplied facts, and (2) the nature of the criminal conduct. *United States v. Martino,* 664 F.2d 860, 867 (2d Cir.1981), *cert. denied* 458 U.S. 1110, 102 S.Ct. 3493, 73 L.Ed.2d 1373 (1982). While it is true that the facts submitted in support of an application for a search warrant must be close in time to the criminal activity to warrant a finding of probable cause, such proximity is less important in ongoing criminal activities. *See United States v. Beltempo,* 675 F.2d 472, 477 (2d Cir.), *cert. denied,* 457 U.S. 1135, 102 S.Ct. 2963, 73 L.Ed.2d 1353 (1982); *United States v. Martino, supra,* 664 F.2d at 867. A Court should determine whether evidence is likely to be found at an identi-

fied location using "flexibility and common sense." *United States v. Beltempo, supra,* 675 F.2d at 478. This Court should consider the "practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Id.* at 477, *quoting Brinegar v. United States,* 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949).

Taking a common sense view of the practical considerations that confront law enforcement officials in everyday life, the criteria of age of facts and nature of the criminal activity support a finding that the magistrate had probable cause to issue the warrant. First, the facts in the affidavit paint a picture of a massive, ongoing criminal enterprise involving millions of dollars. The affidavit alleged that LaMorte smuggled drugs into the United States from countries all over the world. The affidavit stated that LaMorte had participated in the importation of two multi-ton shipments of marijuana from Thailand in the early 1980's, and two multi-ton shipments of hashish in the late 1970's. The Eastern District complaint alleged that LaMorte had been engaged in multiple importations of large quantities of marijuana from Jamaica, Colombia, Morocco, and Lebanon over a period ranging from 1971 until at least 1984. A common sense view of these facts make it likely that LaMorte would retain some records of these activities long after the activity ceased.

Second, the affidavit identified the specific items which likely remained long after LaMorte's criminal activity may have ceased. Two informants present at a late 1983 meeting with LaMorte concerning the Thailand shipments told Special Agent Nelson that LaMorte showed them a detailed ledger charting his sales of marijuana by grade and price to calculate the amount LaMorte owed the informants. The affidavit alleged that LaMorte travelled extensively in connection with his drug smuggling activities, and that LaMorte was alleged to have replaced his passport in 1985. The affidavit revealed that LaMorte had received correspondence in the last six months from one Bruce Perlowin, an indi-

vidual serving a sentence on a conviction for a continuing criminal enterprise involving marijuana importation. The affidavit then identified many documents, including the account ledger, the expired passport, and telephone or address books which might reveal other possible drug contacts, such as the convicted marijuana smuggler who had recently contacted LaMorte.

Further, Special Agent Nelson averred that in his experience as a DEA agent, it was likely that LaMorte still retained such documentary evidence. Nelson reported that "other searches of the residences of large-scale narcotics traffickers resulted in important documentary evidence seized." The search warrant sought "books, records, passports, receipts, notes, ledgers, address and telephone books, letters and other correspondence, and other papers" relating to drug importations.

These listed items were not temporary in nature or likely to dissipate over the intervening time. Unlike drugs or cash, records of past activity are likely to be maintained over time, especially if the activity involved millions of dollars over almost two decades as in the instant situation. Almost any individual would be likely to retain an expired passport. Further, that LaMorte recently had received correspondence from a felon convicted of drug smuggling indicated LaMorte was likely to retain some remnants of his criminal activities. Common sense indicates that LaMorte was likely to possess this evidence when the agents applied for the warrant.

All of these factors warrant a finding that the facts were not sufficiently stale to preclude a magistrate finding there was probable cause to issue the search warrant. Further, a judicial officer's determination that probable cause existed is entitled to deference. *United States v. Martino, supra,* 664 F.2d at 867.

■ Relatedly, LaMorte argues that the affidavit insufficiently connected the premises to the alleged criminal activity. LaMorte contends that the affidavit failed to conclusively establish that the premises was even LaMorte's primary residence. In LaMorte's view, the magistrate only relied on the opinion of Special Agent Nelson and overlooked the glaring deficiencies in the affidavit. But this assertion by LaMorte ignores the fact that in making a practical evaluation of the facts as presented in the affidavit, the neutral magistrate drew the common sense conclusion that LaMorte was likely to have the documentary evidence in his possession. The agent's opinion that the evidence sought would still be in LaMorte's possession was information that bolstered the facts submitted in the affidavit.

■ In his supplemental papers LaMorte raises the contention that the packets of heroin seized with the additional evidence should be suppressed since they were outside the scope of the warrant. The testimony of Special Agent Agrifolio established that the packets were dislodged accidentally during the search for books and records. Once accidentally dislodged they were in plain view. The oral report of their existence and the affidavit established probable cause to issue the second warrant.

In sum, the affidavit established probable cause for the magistrate to believe that LaMorte had books and records of this criminal activity at the premises and issue the warrant. Further, affidavit and oral report to the magistrate established probable cause to issue the second warrant.

### B. The Good–Faith Exception

■ LaMorte argues that the evidence is not protected from suppression under the good faith exception since he alleges that the affidavit misled the magistrate by omitting material facts. LaMorte alleges the affidavit omitted (1) that LaMorte's brother had never seen books or records at the premises, (2) that LaMorte maintained an office in Manhattan, and (3) that LaMorte owned many other properties in addition to the premises.

■ When law enforcement officials seize evidence in reasonable reliance that they possessed a facially valid warrant, the good faith exception to the exclusionary rule as set out in *United States v. Leon, supra,* 468 U.S. 897, 104 S.Ct. 3405, 82

L.Ed.2d 677 (1987) only allows the suppression of evidence in four limited circumstances: (1) if the magistrate was misled by information the affiant knew was false; (2) if the magistrate wholly abandoned his judicial role; (3) if the supporting affidavit lacked any indicia of probable cause; and (4) if the warrant was insufficiently specific. *Id.* at 923, 104 S.Ct. at 3420–21.

The alleged factual omissions implicate none of these four *Leon* factors. First, the fact that Thomas LaMorte, William's brother, did not see any books or records in his visits to William's home is not a material omission. It is unlikely that as a guest Thomas LaMorte would see detailed records regarding William's drug smuggling. The testimony of Special Agent Agrifolio established that the records were primarily seized from the basement, a closet safe, and an upstairs office. It is doubtful such records would be in a guest's plain view next to the family photo albums on a coffee table. LaMorte cannot credibly argue that the officials in this case misled the magistrate by omitting this fact.

Second, the fact that the affidavit did not disclose that LaMorte maintained an office in Manhattan similarly fails to trigger any *Leon* protection. Implicit in any search warrant for documentary evidence is the fact that the records might possibly be maintained in any number of other places such as a safe-deposit box or be in some other person's possession. The magistrate could hardly have been misled by this self-evident omission.

Finally, the failure to disclose that LaMorte owned several properties in addition to the premises is of no moment whatsoever. The record indicates that the agents believed that the premises was LaMorte's principle residence as a result of utility bills and the school enrollment of LaMorte's children.

In this instance, the agents presented all the relevant facts in their knowledge to a detached and neutral magistrate. The affidavit even emphasized the three and one half year lapse of time between the last alleged criminal act and the date of application for the warrant. The magistrate then considered all of these relevant facts and issued a facially valid warrant.

The agents relied on this warrant in good faith and should not have questioned its facial validity. The testimony of Special Agent Agrifolio established that AUSA Ball believed there was probable cause to issue the warrant, and that after obtaining the warrant from the magistrate, the agents proceeded to the premises believing they possessed a valid warrant. Courts in this circuit should not suppress evidence in such circumstances. *United States v. Buck,* 813 F.2d 588, 593 (2d Cir.), *cert. denied* 484 U.S. 857, 108 S.Ct. 167, 98 L.Ed.2d 121 (1987); *United States v. Thomas,* 757 F.2d 1359, 1368 (2d Cir.), *cert. denied* 474 U.S. 819, 106 S.Ct. 66, 88 L.Ed.2d 54 (1985). In sum, LaMorte has not offered a persuasive rationale that the evidence should be suppressed under the good faith exception.

C. Bill of Particulars

 LaMorte moves this Court to order the Government to produce a detailed bill of particulars disclosing the dates, times, places, and names regarding the acts he is charged with. In order to obtain a bill of particulars, the defendants must establish that the Indictment did not "set forth the essential elements and facts needed to inform [him] of the charges." *United States v. Panza,* 750 F.2d 1141, 1148 (2d Cir.1984). The important question is whether the information sought is necessary, not whether it is helpful. *United States v. Guerrerio,* 670 F.Supp. 1215, 1224 (S.D.N.Y.1987); *United States v. Payden,* 613 F.Supp. 800, 816–18 (S.D.N.Y. 1985). It is improper to use a bill of particulars to compel the Government to disclose the manner in which it will prove the charges or preview its evidence or legal theory. *United States v. Torres,* 901 F.2d 205, 234 (2d Cir.1990); *United States v. Bortnovsky,* 820 F.2d 572, 574 (2d Cir. 1987).

The Indictment 89 Cr. 742 specifically lists the dates, times, amounts of drugs, and locations of the overt acts charged for the conspiracy and continuing criminal en-

terprise counts. The forfeiture counts specifically lists each property by address, and location. Further, the record indicates that the Government has provided LaMorte with extensive pre-trial discovery. This Indictment adequately informs LaMorte of the charges against him, and comports with the specificity requirements of Rule 7(c) of the Federal Rules of Criminal Procedure and applicable law. Accordingly the defendant's request for a bill of particulars is denied.

### III. Conclusion

It is hereby ordered that the motion to suppress evidence is hereby denied in all respects. It is further ordered that defendant's motion for a bill of particulars is denied.

SO ORDERED.