**UNITED STATES of America**

v.

**John GAMBINO, et al., Defendants.**

**No. 9S 88 Cr. 919 (PKL).**

United States District Court,
S.D. New York.

Dec. 21, 1992.

Otto G. Obermaier, U.S. Atty., S.D.N.Y., New York City (James B. Comey, Patrick J. Fitzgerald, of counsel), for the U.S.

Hoffman & Pollok (John L. Pollok, of counsel), Santangelo, Santangelo & Cohen (George L. Santangelo, of counsel), Michael Rosen, New York City, for John Gambino.

Edward S. Panzer, Bruce Cutler, New York City, for Joseph Gambino.

John M. Apicella, Charles F. Carnesi, Brooklyn, NY, for Lorenzo Mannino.

Ira J. Friedman, Brooklyn, NY, for Francesco Inzerillo.

Howard R. Leader, New York City, for Matteo Romano.

## OPINION AND ORDER

LEISURE, District Judge.

On September 28, 1992, a Grand Jury filed the ninth superseding indictment (the "indictment") against the defendants in this case. The indictment alleges that the defendants participated in the illegal activities of an international criminal organization known as "the Mafia" or "La Cosa Nostra," which allegedly includes groups in both the United States and Sicily. More specifically, the enterprise charged in the indictment allegedly consists of "made" members and associates of the Gambino

Family of the American Mafia, together with "made" members and associates of the Passo Di Rigano, San Lorenzo, and Santa Maria di Gesu Families of the Sicilian Mafia. According to the Government, this organization, or system of organizations, has engaged in the importation and distribution of large quantities of narcotics in violation of federal law, as well as other illicit activities such as illegal gambling and loansharking. It is alleged that the affairs of this enterprise have been conducted through various acts of violence including extortion and murder.

The Government has moved for the impaneling of an anonymous jury. In addition, five defendants charged in the indictment—John Gambino, Joseph Gambino, Lorenzo Mannino ("Mannino"), Francesco Inzerillo ("Inzerillo"), and Matteo Romano ("Romano") (collectively, the "moving defendants")—have brought several pretrial motions including a motion to suppress certain electronic surveillance evidence from the Ravenite Social Club, demands for a bill of particulars, demands for *Brady* material, various severance motions, a motion to dismiss the racketeering charges against defendant Romano, and a motion to preclude the admissibility of certain evidence against Romano relating to his participation in an uncharged narcotics conspiracy. For the reasons stated below, the Government's motion for an anonymous jury is granted, and the moving defendants' various pretrial motions are denied in their entirety.

## BACKGROUND

The extensive procedural background of this case is set forth in the Court's prior decisions and will not be restated here.[1] However, the Court will summarize the charges set forth in the ninth superseding indictment, as to the five moving defendants. The indictment contains ten counts. Count One charges the moving defendants, except for Francesco Inzerillo, with conspiring to participate in a criminal enter-

prise in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(d). Count Two charges the moving defendants, except for Francesco Inzerillo, with participating in a criminal enterprise in violation of RICO, 18 U.S.C. § 1962(c). Count Three charges defendants John Gambino, Joseph Gambino, Lorenzo Mannino, and Francesco Inzerillo with conspiring to violate the federal narcotics laws in violation of 21 U.S.C. § 846. Count Four charges defendants John Gambino and Joseph Gambino with engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848(a) and (b). Count Five charges that, on or about March 15, 1988, defendants John Gambino and Joseph Gambino distributed and possessed heroin with the intent to distribute in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(B) and 18 U.S.C. § 2. Counts Six and Seven charge defendants John Gambino, Joseph Gambino, and Lorenzo Mannino with conspiring to murder (Count Six), and murdering (Count Seven), Francesco Oliveri in aid of racketeering in violation of 18 U.S.C. § 1959. Count Eight charges defendants John Gambino and Joseph Gambino with failing to appear before the Court as required by the conditions of their release, in violation of 18 U.S.C. § 3146(a)(1) and (b)(1)(A)(i). Count Nine in the indictment alleges forfeiture of property against defendants John Gambino, Joseph Gambino, and Lorenzo Mannino, pursuant to 21 U.S.C. § 853(a). The property allegedly includes, but is not limited to, at least $25 million in gross receipts from the sale of heroin and cocaine during the period January 1, 1975, until the filing of the indictment, as contained in Counts Three, Four, and Five. Finally, Count Ten alleges the forfeiture of certain other "substitute properties" pursuant to 21 U.S.C. § 853(p), as against defendants Joseph Gambino, John Gambino, and Lorenzo Mannino to the extent that the property alleged under Count Nine cannot be reached for one of the enumerated reasons set forth in Section 853(p).

---

1. For a detailed discussion of the procedural history of this case, *see United States v. Gambi-*

*no,* 784 F.Supp. 129 (S.D.N.Y.1992).

A number of pretrial motions have now been brought by the various parties in the wake of the ninth superseding indictment.[2] First, the Government has moved for the impaneling of an anonymous jury in this case. The Government initially brought its motion for an anonymous jury on January 17, 1990. On June 13, 1990, the defendants filed opposition papers, to which the Government replied by letter to the Court, dated September 28, 1990. The Court decided to postpone consideration of this issue until the final stage of the pretrial process, which we have now entered. The Government has supplemented its original motion by letter to the Court, dated November 10, 1992.

Second, defendants John and Joseph Gambino have now brought the following motions before the Court: (1) a motion to suppress evidence resulting from certain electronic interceptions at the Ravenite Social Club in Manhattan; (2) demand for a bill of particulars in connection with Counts Four, Six, Seven and Eight of the indictment; (3) a renewed demand for evidence favorable to the defendants pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and its progeny; and (4) a motion for severance of the bail jumping charge alleged in Count Eight, based upon improper joinder and prejudice. In addition, defendant John Gambino has made a motion for a *medical* severance.

Defendant Matteo Romano has brought the following motions with respect to the ninth superseding indictment: (1) motion to dismiss the racketeering charges (*i.e.* Counts One and Two) against him; (2) motion *in limine* to preclude the introduction of evidence at trial regarding Romano's alleged participation in an uncharged narcotics conspiracy; and (3) a renewed motion

to sever his trial based upon prejudicial spillover. Defendant Mannino also has renewed his motion for severance of his case and, in addition, has moved for a bill of particulars with respect to the alleged Oliveri murder. Defendant Francesco Inzerillo similarly has renewed his motion for severance of his case, on grounds of prejudicial spillover and improper joinder, and also has moved for a bill of particulars as to Count Three with respect to the alleged murder of Palermo Public Prosecutor Gaetano Costa.[3]

## DISCUSSION

### I. MOTION FOR ANONYMOUS JURY

The Government has moved the Court to take the following precautions to ensure that the jury will be free from any improper influence, intimidation or fear during trial: (1) *voir dire* of prospective jurors should be limited so that a venireman's name, address, and name of employer or place of employment is not disclosed; (2) during trial, the jurors should be kept together during recesses and taken to lunch as a group each day by the United States Marshal's Service; and (3) at the end of each trial day, the jurors should be transported together by the United States Marshal's Service from the courthouse to an undisclosed central location, from which they can leave for their respective communities.

The Second Circuit has repeatedly held that the use of an anonymous jury is appropriate where: (1) there is strong reason to believe that the jury needs protection; and (2) reasonable precautions are taken to minimize any prejudicial effects to the defendant and to ensure that the defendants'

---

2. The Court heard oral argument on these various motions on December 15, 1992.

   On that date, the Court also conducted hearings pursuant to the procedures outlined in *United States v. Curcio,* 680 F.2d 881 (2d Cir. 1982) and its progeny, with respect to: (1) defendant Joseph Gambino and his attorney, Bruce Cutler, Esq.; and (2) defendant Lorenzo Mannino and his attorney, Charles F. Carnesi, Esq.

   After conducting the procedures set forth in *Curcio* and having been satisfied with the defen-

dants' responses, the Court ruled from the bench that Mr. Cutler could be reinstated as defendant Joseph Gambino's trial counsel and Mr. Carnesi could be reinstated as defendant Mannino's trial counsel.

3. The moving defendants have also joined in the motions made by all co-defendants to the extent such motions are applicable to their individual charges.

fundamental rights are protected. *United States v. Paccione*, 949 F.2d 1183, 1192 (2d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 3029, 120 L.Ed.2d 900 (1992); *United States v. Vario*, 943 F.2d 236, 239 (2d Cir. 1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 882, 116 L.Ed.2d 786 (1992); *United States v. Tutino,* 883 F.2d 1125, 1132 (2d Cir. 1989), *cert. denied,* 493 U.S. 1081, 110 S.Ct. 1139, 107 L.Ed.2d 1044 (1990); *United States v. Persico,* 832 F.2d 705, 717–18 (2d Cir.1987), *cert. denied,* 486 U.S. 1022, 108 S.Ct. 1995, 100 L.Ed.2d 227 (1988); *United States v. Thomas,* 757 F.2d 1359, 1365 (2d Cir.), *cert. denied,* 474 U.S. 819, 106 S.Ct. 66, 88 L.Ed.2d 54 (1985); *see also United States v. Ferguson,* 758 F.2d 843, 854 (2d Cir.), *cert. denied,* 474 U.S. 841, 106 S.Ct. 124, 88 L.Ed.2d 102 (1985); *United States v. Barnes,* 604 F.2d 121, 133–43 (2d Cir. 1979), *cert. denied,* 446 U.S. 907, 100 S.Ct. 1833, 64 L.Ed.2d 260 (1980).

The Second Circuit set forth an underlying rationale for the use of an anonymous jury in *United States v. Barnes:*

> If a juror feels that he and his family may be subjected to violence or death at the hands of a defendant or his friends, how can his judgment be as free and impartial as the Constitution requires? If "the anonymous juror feels less pressure" as a result of anonymity, ... this is as it should be—a factor contributing to his impartiality. The court's decision as to anonymity and sequestration comported with its obligation to protect the jury, to assure its privacy, and to avoid all possible mental blocks against impartiality.

604 F.2d at 140–41 (citation omitted); *see also United States v. Thomas,* 757 F.2d at 1364 ("[o]bviously, explicit threats to jurors or their families or even a general fear of retaliation could well affect the jury's ability to render a fair and impartial verdict").

In determining whether there is strong reason to believe that the impaneling of an anonymous jury is necessary, courts have often considered the following factors: "(1) the seriousness of the offenses charged, including whether the defendants are alleged to have engaged in dangerous and unscrupulous conduct in the context of a large-scale criminal organization and whether the defendants have access to means to harm jurors; (2) whether the defendants have engaged in past attempts to interfere with the workings of the judicial process, such as by jury tampering or attempts to evade prosecution; and, (3) the nature and degree of pretrial and expected trial publicity." *United States v. Melendez,* 743 F.Supp. 134, 137 (E.D.N.Y.1990); *see also United States v. Persico,* 621 F.Supp. 842, 878 (S.D.N.Y.1985), *aff'd on this issue,* 832 F.2d 705, 717–18 (2d Cir. 1987), *cert. denied,* 486 U.S. 1022, 108 S.Ct. 1995, 100 L.Ed.2d 227 (1988).

### A. *Strong Reason to Believe the Jury Needs Protection*

#### (1) Seriousness of Offenses Charged

■ In *United States v. Vario,* the Second Circuit emphasized that the mere fact that the case involves "organized crime" does not, by itself, justify an anonymous jury:

> The invocation of the words "organized crime," "mob," or "Mafia," unless there is something more, does not warrant an anonymous jury. This "something more" can be a demonstrable history or likelihood of obstruction of justice on the part of the defendant or others acting on his behalf or a showing that trial evidence will depict a pattern of violence by the defendants and his associates such as would cause a juror to reasonably fear for his own safety.

943 F.2d at 241.

The posture of the instant case meets the standard set forth in *Vario.* First, even a cursory review of the ninth superseding indictment reveals the serious nature of the charges in the instant case. The indictment names the defendants as being members of a large-scale criminal organization known as La Cosa Nostra, and charges the defendants with committing various acts, including acts of violence, to protect, maintain and further their criminal enterprise, which centered on massive drug trafficking. The defendants, along with their co-racketeers, are alleged to have conducted

the affairs of the enterprise through, *inter alia,* extortion, murder, bribery, illegal gambling, and loansharking. For example, defendants John Gambino, Joseph Gambino, and Lorenzo Mannino are charged with the murder of Francesco Oliveri. Defendant Romano is charged with threatening to murder and mutilate Pietro Candela in an attempt to affect the movement in commerce of one kilogram of heroin. Defendant Francesco Inzerillo is charged with participating in the murder of Palermo Public Prosecutor Gaetano Costa in Sicily in 1980. The Court finds that it is indisputable that the conduct alleged against these defendants involves dangerous and unscrupulous conduct in the context of a large-scale criminal organization. Accordingly, the seriousness of the offenses charged against these defendants supports having an anonymous jury in the instant case. *See United States v. Barnes,* 604 F.2d at 141 (allegations of "dangerous and unscrupulous conduct" and extensive pretrial publicity supported withholding the names and addresses of jurors); *see also United States v. Thomas,* 757 F.2d at 1364 (history of violence—"mob-style" killings—related directly to the issue of juror safety or fear of reprisal).

More importantly, there is also evidence that the group with which defendants are associated, La Cosa Nostra (and, more specifically, the Gambino Crime Family), has a history of attempting to interfere with the judicial process. The indictment charges that the enterprise consists in part of "made" members and associates of the Gambino Family of the American Mafia, together with "made" members and associates of the Passo Di Rigano, San Lorenzo, and Santa Maria di Gesu Families of the Sicilian Mafia. Moreover, John Gambino is alleged to have been a captain in the Gambino Crime Family and defendants Joseph Gambino (a "made" member), Lorenzo Mannino (an "associate") and Francesco Inzerillo (an "associate") are all alleged to have been part of John Gambino's crew. Defendant Matteo Romano also is alleged to be an associate in the Gambino Family aligned with John Gambino's crew. The Government alleges the following:

> The Government, moreover, will seek to present evidence of the conspirators' attempts to infiltrate federal grand jury proceedings in the Eastern District of Pennsylvania; to harbor and maintain fugitives from justice such as Adamita and Tomasso Inzerillo; to bribe law enforcement officials in the Dominican Republic and Florida; and to ascertain the identities of other potential witnesses.

Affidavit of Assistant United States Attorney Frances M. Fragos, Esq., sworn to on January 17, 1990 ("Fragos Affidavit"), at ¶ 13. Therefore, the Court finds that, given the defendants' connection to, and substantial involvement, in the affairs of this criminal organization, such evidence has direct relevance "to the question of juror fears or safety in the trial at hand, beyond the innuendo that this connection conjures up." *United States v. Vario,* 943 F.2d at 241.[4]

---

**4.** The Government also points to a case in the Eastern District involving Gene Gotti, an alleged member of the Gambino Family, where the district court declared a mistrial after the Government developed evidence that the defendants were attempting to ascertain the identities of and influence the jurors. *See United States v. Ruggiero,* 846 F.2d 117, 118 (2d Cir.) (noting that "the Federal Bureau of Investigation (FBI) had received information from confidential sources that the defendants had identified members of the anonymous jury for the purpose of influencing the verdict ... [and] had employed William Sewell, a private investigator, to trace the license plates of suspected jurors"), *cert. denied,* 488 U.S. 966, 109 S.Ct. 491, 102 L.Ed.2d 528 (1988).

This Court, in considering this type of evidence, has carefully adhered to the admonition of the Second Circuit in *United States v. Vario,* 943 F.2d at 236, where the Court clearly stated that vague references to another organized crime trial that had absolutely no relation or relevance to the current proceeding is inappropriate in considering the anonymous jury issue. In the instant case, the evidence of tampering in *Ruggiero* which involved an alleged member of the Gambino Family, has relevance here, at the very least, to the extent that the moving defendants, like Gene Gotti, are alleged to be major participants in the Gambino Crime Family. *See* Fragos Affidavit, at ¶¶ 15–17. The *Ruggiero* case provides additional evidence of the alleged Gambino Crime Family's pattern of interfering with the judicial process on behalf of its associates.

Based upon the serious allegations in the indictment and the information provided in the Fragos Affidavit, there is strong reason to believe that precautionary measures with respect to the impaneling of the jury are warranted in the instant case. The Government has presented substantial evidence that there is a likelihood of interference with the judicial process on the part of either the defendants or their alleged associates within the Gambino Crime Family. *See, e.g., United States v. Persico,* 621 F.Supp. at 879 ("[g]iven the serious nature of the charges in the instant indictment, the potential for substantial incarceration upon conviction, and the Colombo Family's history of attempting to corrupt and obstruct the law enforcement and judicial processes, the Court concludes that the possibility of further efforts to frustrate justice is real and substantial"); *see also United States v. Thomas,* 757 F.2d at 1365 (upholding the district court's determination to impanel an anonymous jury where "there was strong evidence of defendants' past attempts to interfere with the judicial process, and defendants were alleged to be part of a group that possessed the means to harm jurors"). Furthermore, the Government has shown that the trial evidence will depict alleged acts of violence by defendants and their associates that would cause a juror to reasonably fear for his or her own safety.

**B.** *Acts Which Indicate Willingness to Corrupt the Judicial System*

The Government also has alleged that both John Gambino and Joseph Gambino have committed certain acts in an attempt to corrupt the judicial system. With respect to John Gambino, the Government has submitted the testimony of Salvatore Gravano in *United States v. Gotti* where Gravano testified that John Gambino participated in an effort to tamper with a jury in the early 1990 trial of Gambino Family

"capo," Edward Lino. Moreover, the ninth superseding indictment alleges that Joseph Gambino bribed public officials in order to facilitate the escape of a co-conspirator Adamita from the Immigration and Naturalization Service in Florida. The Court finds that these allegations provide additional support, with respect to John and Joseph Gambino, for granting the anonymous jury.[5]

**C.** *Publicity*

Courts have frequently considered the amount of publicity that a trial will generate as one factor in deciding whether to impanel an anonymous jury. *See, e.g., United States v. Persico,* 832 F.2d at 717 ("extensive publicity this case is expected to continue to attract" supported impaneling an anonymous jury) (quotation omitted); *United States v. Barnes,* 604 F.2d at 141 ("in a case that generated as much pretrial publicity as this one did and in which allegations of dangerous and unscrupulous conduct abounded," anonymous jury was appropriate).

The Government states that the arrests of the defendants in this case were reported in both the print and electronic news media. Moreover, this case was given extraordinary press coverage in the wake of John and Joseph Gambino's flight in September 1992. Based upon this extensive pretrial coverage, the Court finds that it is likely that there also will be media attention given to this case during the course of the trial and, thus, the proposed precautionary measures will serve to shield the jurors from such trial publicity.

In sum, the Court finds that the Government has fully satisfied the requirement set forth in *Vario* that the Government show "something more" in requesting an anonymous jury than simply invoking words such as "organized crime." Based upon the seriousness of the offense charged, the potential for corruption of the

---

5. Any contention by the other co-defendants, that they are not alleged to be involved in these acts allegedly committed by John Gambino and Joseph Gambino and therefore an anonymous jury with respect to the other co-defendants is unwarranted, is completely without merit. The

Court finds that there are sufficient reasons, set forth above, aside from the acts individually attributable to John Gambino and Joseph Gambino, which support granting an anonymous jury in the instant case as to defendants Mannino, Romano, and Inzerillo.

judicial process in the instant case by the defendants or their alleged associates, and the risk of media interference with the jurors, the Court finds that the impaneling of an anonymous jury is warranted in the instant case. Moreover, the Court finds that the procedures requested by the Government are both reasonable and appropriate under these circumstances. *See, e.g., United States v. Persico,* 832 F.2d at 717–18 (affirming use of anonymous jury procedure with other security precautions including segregating jurors during lunch and recesses and having marshals transport the jurors to a central location from which they were discharged each day); *United States v. Paccione,* 949 F.2d at 1191–92 (same).

### D. *Cautionary Instruction and Voir Dire*

Once the Court finds that impaneling an anonymous jury is justified, the Court must also take reasonable precautions to minimize any prejudicial effects to the defendants. *See, e.g., United States v. Paccione,* 949 F.2d at 1192–93; *United States v. Tutino,* 883 F.2d at 1132–33; *United States v. Thomas,* 757 F.2d at 1365.

In order to minimize any prejudicial effect to the defendants in the instant case and ensure that the defendants' fundamental rights are protected, the Court will take certain reasonable precautions. First, the Court will instruct the jury at the outset of the trial that these special procedures are routine and designed to protect the jury from any contacts by the media with respect to the instant case. This plausible and nonprejudicial reason for not disclosing the jurors' identity or taking other security measures will minimize the possibility that the anonymous procedure would cast unfair aspersions on the defendants. *See, e.g., United States v. Paccione,* 949 F.2d at 1193 (instructed jury that the anonymity was a protection against pressures from the media); *United States v. Thomas,* 757 F.2d at 1364–65 & n. 1 (same); *see also*

*United States v. Tutino,* 883 F.2d at 1133 (cautionary instruction sufficient).[6]

Second, the Court will protect the defendants' right to a fair and impartial jury by conducting a probing *voir dire* that will attempt to uncover any biases that jurors might have in the instant case. *See, e.g., United States v. Vario,* 943 F.2d at 241–42 (in impaneling an anonymous jury, "the district court conducted a searching *voir dire* which sufficiently enabled Vario to exercise his challenges meaningfully and to obtain a fair and impartial jury"); *United States v. Barnes,* 604 F.2d at 140 ("[a]s long as a defendant's substantial rights are protected by a *voir dire* designed to uncover bias as to issues in the cases and as to the defendant himself, then reasonable limitations on the questioning should not be disturbed on appeal"). More specifically, the Court will use a comprehensive jury questionnaire to ensure that both the Government and defense counsel will have "an arsenal of information" about each potential juror containing "responses to questions concerning his own life, as well as his attitudes about the issues that would arise in the case" and, therefore, the parties will be able to intelligently exercise their challenges for cause and peremptory challenges. *United States v. Barnes,* 604 F.2d at 142; *see also United States v. Tutino,* 883 F.2d at 1133 (*voir dire* sufficient in anonymous jury situation where the Court, using a questionnaire, asked potential jurors, *inter alia,* about their neighborhoods, marital status, employment, spouse's and children's employment, education, ethnic background, military service, and, optionally, religious background).

## II. MOTION TO SUPPRESS THE RAVENITE TAPES

Defendants John and Joseph Gambino have moved to suppress, on a variety of grounds, the fruits of electronic surveillance taken in and around the vicinity of the Ravenite Social Club in Manhattan, which the Government recently has indicat-

---

**6.** The Court will provide copies of the instruction given to the jury by this Court in the recent case of *United States v. Giampa,* S 92 Cr. 437 (PKL), 1992 WL 295983, as an illustration of such an instruction. The Court invites both the Government and the defendants to submit a proposed instruction with respect to this issue on or before January 6, 1993.

ed it intends to use at trial. This precise issue was extensively litigated in *United States v. Gotti*, 771 F.Supp. 535 (E.D.N.Y. 1991), where the United States Attorney for the Eastern District of New York sought to use evidence obtained from the Ravenite surveillance. After the submission of extensive briefs on this issue and oral argument, the Honorable I. Leo Glasser, United States District Judge, Eastern District of New York, denied the motion to suppress in its entirety. The parties in the instant case have submitted copies of the briefs from the *Gotti* case to the Court and have requested that the arguments set forth in those briefs be incorporated by reference. The Court has incorporated those briefs by reference.

Having carefully considered these submissions, the Court denies the motion to suppress the Ravenite surveillance in the instant case and also finds that an evidentiary hearing on this issue is unwarranted.[7] As noted at oral argument, the Court agrees with the analysis set forth in Judge Glasser's published opinion in *United States v. Gotti*, 771 F.Supp. 535 (E.D.N.Y. 1991), in its entirety. Instead of restating that analysis here, this Court simply adopts the reasoning set forth in the *Gotti* case and denies the motion to suppress in the instant case on those grounds.

### III. DEMAND FOR A BILL OF PARTICULARS

Defendants John Gambino, Joseph Gambino, Mannino, and Inzerillo seek a bill of particulars as to the ninth superseding indictment pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure. First, defendants John and Joseph Gambino request a bill of particulars with respect to certain charges including the following: (1) details relating to Court Four, the continuing criminal enterprise charge; (2) details concerning the conspiracy to murder and murder of Francesco Oliveri, alleged in Counts Six and Seven; and (3) details with respect to "when and where each of the Gambino defendants were ordered to appear before the Court so as to give rise to the [bail jumping charge]" in Count Eight. Pretrial Motions of John and Joseph Gambino, dated October 23, 1992, at 4. Defendant Mannino also demands various particulars concerning the Oliveri murder, in Counts One, Six, and Seven. Finally, defendant Francesco Inzerillo request details as to the assistance that he allegedly provided to Salvatore Inzerillo in connection with the murder of Palermo Public Prosecutor Gaetano Costa.

In response to these requests, the Government has supplied additional information to the defendants. First, with respect to the Oliveri murder, the Government alleges that the murder of Oliveri occurred on May 3, 1988, at approximately 6:30 a.m. in front of 41–15 35th Avenue, Queens, New York. It is further alleged that Joseph Gambino and Lorenzo Mannino were present at the scene of the murder and participated in the killing, although the shots were allegedly fired by Robert Bisaccia. The Government also notes that it does not allege that John Gambino was present at the crime scene. The Government has agreed to provide defense counsel with a copy of the autopsy report and will also make available crime scene photographs for review.

With respect to the Costa murder, the Government has provided additional information including allegations that Costa was shot while he was a pedestrian on a street in Palermo, Sicily on August 6, 1980. It is

---

**7.** The Government argues, as a threshold matter, that it does not intend to offer any interceptions in which Joseph Gambino was a participant and, thus, he has no standing to make these motions attacking the Ravenite tapes. Moreover, with respect to John Gambino, the Government notes that the arguments in the motion relating to interceptions of conversations allegedly protected by the attorney-client privilege at the Ravenite Club do not apply because none of John Gambino's attorneys were intercepted. Finally, the Government notes that the interceptions at the Bergen Hunt & Fish Club are irrelevant because the Government does not intend to offer any Bergen Hunt & Fish tapes.

While the Court agrees with these threshold arguments asserted by the Government, the Court, for purposes of this motion, has decided to consider *all* of the arguments raised in the *Gotti* briefs with respect to the Ravenite tapes, and consider those arguments as to *both* John and Joseph Gambino.

alleged that Francesco Inzerillo assisted in the murder by driving the killers to the scene and driving them away following the assassination. The Government noted that it is seeking materials such as an autopsy report and crime scene photographs by letters rogatory and, when the Government obtains any such materials, it has agreed to make them available to defense counsel.

Finally, by letter to the Court, dated December 17, 1992, the Government supplied the defendants with informal particulars concerning the continuing criminal enterprise charge against John and Joseph Gambino including: (1) the identities of several persons allegedly supervised by John and Joseph Gambino in this enterprise; (2) some acts which, in part, allegedly constitute the series of continuing violations underlying the charge; and (3) information concerning the manner in which the Government calculates the enterprise involved more than $10 million in drug proceeds, 30 kilograms of heroin, and 150 kilograms of cocaine.

With respect to all of the various requests for additional details raised by the moving defendants concerning the charges in the ninth superseding indictment, the Court finds that a bill of particulars simply is not required. Rule 7(c) of the Federal Rules of Criminal Procedure states that "[t]he indictment ... shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." The purpose of the bill of particulars is "to permit a defendant 'to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense.'" *United ed States v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir.1988) (*quoting United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir.1987) (citations omitted) (per curiam)).

Accordingly, the Second Circuit has held that " '[a] bill of particulars should be required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused.'" *United States v. Torres*, 901 F.2d 205, 234 (2d Cir.) (*quoting United States v. Feola*, 651 F.Supp. 1068, 1132 (S.D.N.Y.1987), *aff'd*, 875 F.2d 857 (2d Cir.) (mem.), *cert. denied*, 493 U.S. 834, 110 S.Ct. 110, 107 L.Ed.2d 72 (1989)), *cert. denied*, 498 U.S. 906, 111 S.Ct. 273, 112 L.Ed.2d 229 (1990). The Second Circuit has also emphasized that " '[a]cquisition of evidentiary detail is not the function of the bill of particulars.'" *Torres*, 901 F.2d at 234 (*quoting Hemphill v. United States*, 392 F.2d 45, 49 (8th Cir.), *cert. denied*, 393 U.S. 877, 89 S.Ct. 176, 21 L.Ed.2d 149 (1968)); *see also United States v. Cephas*, 937 F.2d 816, 823 (2d Cir.1991) ("the government need not particularize all of its evidence" in an indictment), *cert. denied*, —— U.S. ——, 112 S.Ct. 884, 116 L.Ed.2d 788 (1992). Thus, "[i]t is improper to use a bill of particulars to compel the Government to disclose the manner in which it will prove the charges or preview its evidence or legal theory." *United States v. LaMorte*, 744 F.Supp. 573, 577 (S.D.N.Y.1990).

■ Having carefully considered all of the defendants' requests, the Court finds that the indictment adequately advises the defendants of the specific acts of which they are accused. With respect to the continuing criminal enterprise charge, the indictment contains sufficient detail relating to this alleged narcotics enterprise. While the Government, without conceding this issue, voluntarily agreed to provide additional information as to this charge, the Court finds that this additional information was not required under Rule 7. *See, e.g., Cephas*, 937 F.2d at 823 (request for bill of particulars properly denied even though Government did not list the specific activities which showed how defendant furthered the criminal enterprise or conspiracy and also did not specifically state an overt act committed by the defendant); *United States v. Shoher*, 555 F.Supp. 346, 350 (S.D.N.Y.1983) (denying requests as to particularization of the manner in which the defendant was the "Master Mind" of the alleged scheme and details of defendant's personal participation in, or knowledge of, the described activities); *United States v. Politi*, 334 F.Supp. 1318, 1321 (S.D.N.Y.

1971) (denying request seeking details as to the specific involvement of each defendant and coconspirator in the operation of the alleged gambling business).

Moreover, courts have repeatedly denied requests for the "whens" and "wheres" and "with whoms" concerning the formation of schemes and conspiracies. *See, e.g., Torres*, 901 F.2d at 233–34 (affirming denial of request for bill of particulars supplying the date defendant joined conspiracy, the identities of co-conspirators, and precise dates and locations relating to the overt acts involved in the conspiracy); *LaMorte*, 744 F.Supp. at 577–78 (denying a demand for a bill of particulars seeking the disclosure of dates, times, places and names regarding the acts defendant is charged with in case involving, *inter alia*, charges of conspiracy to import narcotics and operating a continuing criminal enterprise); *United States v. Wilson*, 565 F.Supp. 1416, 1438 (S.D.N.Y.1983) (denying request seeking particulars regarding the formation of the conspiracy and noting that such requests have "almost uniformly been denied" by the courts).

Accordingly, the Court finds that the information contained in the indictment, by itself, fully satisfies the specificity requirements of Rule 7 with respect to the continuing criminal enterprise charge. Moreover, as noted earlier, the Government has provided additional information concerning the continuing criminal enterprise charge to the defendants. Of course, to the extent that defendants' still request more details concerning this charge in the wake of this additional information, the Court denies such a request.

With respect to Counts Six and Seven, the requests for a bill of particulars similarly is denied. Counts Six and Seven charge defendants John Gambino, Joseph Gambino, and Lorenzo Mannino with conspiring to murder, and murdering, Francesco Oliveri in aid of racketeering in violation of 18 U.S.C. § 1959. The indictment provides the approximate date and location of the murder, the name of the victim, and the alleged participants. As to Counts Six and Seven, no other information concerning the murder, the defendants' participation, or its alleged connection to the enterprise is required under Rule 7. The Government voluntarily has supplied the defendants with additional information regarding the Oliveri murder including the specific time and location of the alleged murder, as well as information concerning the person who allegedly fired the shots. To the extent that defendants' request any more details with respect to the Oliveri murder or any other details concerning Counts Six and Seven, the Court finds such a request to be utterly without merit.[8]

The Court reaches the same conclusion with respect to Inzerillo's demand for particulars as to the murder of Gaetano Costa. The indictment provides the identity of the victim, the participants, and the approximate date and location of the murder. While the Government has supplied additional information to defense counsel, the charge in the indictment is sufficient under Rule 7. Thus, the Court denies defendant Inzerillo's request for a bill of particulars as to this charge.

Finally, the request for particulars with respect to the bail jumping charge also is denied. The indictment provides the approximate time during which the bail jumping occurred—between on or about September 1, 1992, and on or about September 20, 1992. As the Government notes, the transcripts of the Court proceedings during that period, addressing the alleged violation of bail, are available to defense counsel. The defendants clearly have adequate information concerning the nature of the charge and no additional information is required under Rule 7.

In considering a request for a bill of particulars, "[t]he important question is whether the information sought is necessary, not whether it is helpful." *LaMorte*, 744 F.Supp. at 577. In the instant case, the defendants have sufficient information con-

---

**8.** For the same reasons, the Court denies the demand for a bill of particulars with respect to the RICO charge in Count One, paragraph 36, which alleges the conspiracy to murder, and murder of, Oliveri as a racketeering act.

cerning the alleged criminal conduct in the superseding indictment so as to allow the defendants to prepare their defenses and prevent unfair surprise. The Government has fully satisfied the specificity requirements of Rule 7 of the Federal Rules of Criminal Procedure and applicable law. Therefore, the Court finds that the additional details sought by the various defendants in a bill of particulars are unwarranted and the demand for a bill of particulars is denied in its entirety as to each defendant.

## IV. DEMAND FOR *BRADY* MATERIAL

The defendants have made extensive demands for various materials pursuant to *United States v. Brady*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and its progeny. In its papers and at oral argument, the Government has assured the Court that it is well aware of its obligations under *Brady* and its progeny and that it will produce such materials in such a manner as to avoid any delay in the trial. Based on the foregoing, the Court denies defendants' motion.[9]

## V. REQUEST FOR SEVERANCE OF BAIL JUMPING CHARGE

■ Defendants John and Joseph Gambino argue that the bail jumping count in the ninth superseding indictment cannot be properly joined under Rule 8(a) of the Federal Rules of Criminal Procedure because the flight is not related to the other charges. More specifically, John and Joseph Gambino argue that the charges are unrelated in time and there is "no unequivocal evidence" that the motive for absconding was to avoid prosecution for the underlying offense.

Under Rule 8(a), offenses may be joined in the same indictment if such offenses "are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected

together or constituting parts of a common scheme or plan." Fed.R.Crim.P. 8(a). Courts have held that a bail jumping charge may be joined with the underlying offense under Rule 8(a) "if they are related in time, the motive for flight was avoidance of prosecution of the underlying offense, and custody derived directly from the underlying offense." *United States v. Gabay*, 923 F.2d 1536, 1539 (11th Cir.1991); *see also United States v. Peoples*, 748 F.2d 934, 936 (4th Cir.1984), *cert. denied*, 471 U.S. 1067, 105 S.Ct. 2143, 85 L.Ed.2d 500 (1985); *United States v. Ritch*, 583 F.2d 1179, 1181 (1st Cir.), *cert. denied*, 439 U.S. 970, 99 S.Ct. 463, 58 L.Ed.2d 430 (1978).

The Court finds that these requirements have been met in the instant case. First, the superseding indictment alleges that John and Joseph Gambino were involved in a criminal enterprise and engaged in certain racketeering acts up to the date of the filing of the ninth superseding indictment on September 28, 1992. Thus, the bail jumping charge, which is alleged to have occurred approximately between September 1, 1992 and September 20, 1992, is closely related in time to the substantive charges. Second, the flight occurred a few days prior to the defendants' arraignment on the superseding indictment and a Government remand motion. Moreover, a firm trial date had been set for January 11, 1993. Under such circumstances, it can be reasonably inferred that John and Joseph Gambino's motive for flight was the avoidance of prosecution for the underlying offenses. Finally, the third requirement is satisfied because their custody in the instant case derived directly from the underlying offenses. Accordingly, the Court finds that the bail jumping charge and substantive offenses are "connected together" under Rule 8(a) and properly are joined.

■ John and Joseph Gambino also have moved for severance of the bail jumping charge under Rule 14 of the Federal Rules

---

**9.** In a separate letter to Government counsel, with a copy to the Court, defendant Romano also seeks to discover the reasons for the Government's removal of certain charges against him in the most recent indictment. The Government again stated that it is well aware of its obligation to disclose exculpatory information under *Brady* and that the Government is not aware of any such information. Thus, Romano's request similarly is denied.

of Criminal Procedure. They argue that joinder of the bail jumping charge would be extremely prejudicial because it would focus the jury's attention on flight. This argument overlooks the fact that even if the bail jumping charge was severed from this case, the evidence of bail jumping would be admissible in a separate trial on the other substantive counts in an attempt to show consciousness of guilt.[10] Under such circumstances, a motion to sever the bail jumping charge is without merit. *See United States v. Brozyna,* 571 F.2d 742, 747 (2d Cir.1978) (motion to sever bail jumping charge was properly denied where the proof of bail jumping would have been admissible at the separate trial "because evidence of flight is admissible to prove the accused's consciousness of guilt"); *see also United States v. Gabay,* 923 F.2d at 1540; *United States v. Peoples,* 748 F.2d at 936; *United States v. Ritch,* 583 F.2d at 1181. Moreover, the Court notes that a limiting instruction will be given to the jury relating to the consideration of evidence of flight. While John and Joseph Gambino argue that this limiting instruction is inadequate in the instant case, the Court disagrees. The Court finds that the defendants have failed to meet the heavy burden required to justify severance of the bail jumping charge under Rule 14.

Accordingly, the motion of John Gambino and Joseph Gambino to sever the bail jumping charge, pursuant to Rule 8 or Rule 14, is denied.

## VI. MOTIONS FOR SEVERANCE OF TRIAL BASED ON PREJUDICIAL SPILLOVER

Defendants Mannino, Romano, and Inzerillo have renewed their individual motions for severance of their trial based on "prejudicial spillover" from evidence relating to other co-defendants which will deprive them of a fair trial. Each of these defendants argue that substantial prejudice will result in a joint trial from the extensive amount of evidence admitted against other co-defendants which is irrelevant to their case. Moreover, these defendants argue that the addition of a bail jumping charge against John and Joseph Gambino, the extensive publicity resulting from such flight, and the use of an anonymous jury, will create additional prejudicial spillover which requires a separate trial. The Court has considered these renewed motions for severance in light of the new arguments raised by these defendants and, once again, finds severance of any of these defendants is unwarranted in the instant case.

■ To justify a severance under Rule 14 of the Federal Rules of Criminal Procedure, it is not sufficient for the defendant to show that he may suffer some prejudice or would have a greater chance for acquittal at a separate trial. *See United States v. Scarpa,* 913 F.2d 993, 1015 (2d Cir.1990); *United States v. Tutino,* 883 F.2d 1125, 1130 (2d Cir.1989), *cert. denied,* 493 U.S. 1081, 110 S.Ct. 1139, 107 L.Ed.2d 1044 (1990); *United States v. Carson,* 702 F.2d 351, 366 (2d Cir.), *cert. denied,* 462 U.S. 1108, 103 S.Ct. 2456, 77 L.Ed.2d 1335 (1983). Even assuming that a particular defendant can demonstrate some prejudice resulting from joinder, " '[t]he defendant seeking a severance must shoulder the difficult burden of showing that the prejudice to him from joinder is sufficiently severe to outweigh the judicial economy that would be realized by avoiding lengthy multiple trials.' " *United States v. Lanza,* 790 F.2d 1015, 1019 (2d Cir.) (*quoting United States v. Panza,* 750 F.2d 1141, 1149 (2d Cir. 1984)), *cert. denied,* 479 U.S. 861, 107 S.Ct. 211, 93 L.Ed.2d 141 (1986). As the Second Circuit has noted:

> The deference given by an appellate court to a trial court's severance decision reflects the policy favoring joinder of trials, especially when the underlying crime involves a common plan or scheme and defendants have been jointly indicted. Acknowledged in this policy is the inevitable tolerance of some slight preju-

---

**10.** Similarly, in a separate trial as to the bail jumping charge, proof of the underlying offenses would be admissible, at least to some extent, to show motive for flight under Rule

404(b) of the Federal Rules of Evidence. *See United States v. Gabay,* 923 F.2d at 1540; *United States v. Peoples,* 748 F.2d at 936.

dice to codefendants, which is deemed outweighed by the judicial economies resulting from the avoidance of duplicative trials. Further, the risk of inconsistent verdicts resulting from separate trials, and the favorable position that later tried defendants obtain from familiarity with the prosecution's strategy is obviated through multidefendant trials.

*United States v. Cardascia,* 951 F.2d 474, 482–83 (2d Cir.1991). Moreover, claims of "prejudicial spillover" rarely succeed, *see, e.g., United States v. Vanwort,* 887 F.2d 375, 384 (2d Cir.1989) (" 'A defendant raising a claim of prejudicial spillover bears an extremely heavy burden' ") (*quoting United States v. Friedman,* 854 F.2d 535, 563 (2d Cir.1988), *cert. denied,* 490 U.S. 1004, 109 S.Ct. 1637, 104 L.Ed.2d 153 (1989)), *cert. denied,* 495 U.S. 906, 110 S.Ct. 1927, 109 L.Ed.2d 290 (1990), particularly where the defendant advancing the claim is charged, along with other defendants, with conspiracy or RICO violations.

■ In light of the Government's ninth superseding indictment, defendant Mannino has renewed his severance motion because "[t]he ninth superseding indictment greatly reduces the scope of the case against Mr. Mannino as compared to previous indictments and the allegations against codefendants Giovanni Gambino, Giuseppe Gambino, and Emmanuele Adamita." Pretrial Motions of Lorenzo Mannino, dated October 29, 1992, at 1. Both defendants Romano and Inzerillo have made similar claims regarding the disparity of evidence, both quantitatively and qualitatively, that exists between the respective charges against each of them and those of their codefendants.

The Court finds that the ninth superseding indictment has not altered the reasons set forth in the Court's prior decisions in this case denying severance motions with respect to these defendants, as well as other co-defendants. First, Mannino is not a peripheral defendant in the ninth superseding indictment, but rather is alleged to have been a major participant in the racketeering acts alleged in the ninth superseding indictment. The Government argues that the evidence will show that Mannino was a major participant in the alleged criminal activities:

> The proof at trial will show that Mannino participated in extensive narcotics, gambling, and loansharking activities on behalf of John and Joseph Gambino beginning at least in the mid–1980s. The evidence will also establish that Mannino was a highly respected associate of the Gambino Crime Family proposed for formal membership and that Mannino participated in the Oliveri murder with the Gambino brothers, Salvatore Gravano, and others.

Government's Memorandum of Law in Opposition to Defendants' Pretrial Motions, dated November 10, 1992, at 10. With respect to defendant Romano, the indictment alleges, in Counts One and Two, that Romano was an associate in the Gambino Crime Family aligned with John Gambino's crew and was a major participant in the narcotics operation of this racketeering enterprise. As the Government notes, "[t]he evidence against Romano will consist of proof that he was a major narcotics trafficker closely associated with John Gambino, Joseph Gambino, and Emanuele Adamita from the late 1970s until the late 1980s." Letter of the Government in Opposition to Romano's Pretrial Motions, dated December 17, 1992, at 2. Finally, the indictment contains similar charges against Francesco Inzerillo who was alleged to be a "made" member of the Passo di Rigano Family of the Sicilian Mafia and was involved in supplying heroin to John Gambino's heroin operation, and allegedly participated in the murder of Palermo Public Prosecutor Gaetano Costa. It is alleged that Inzerillo later fled to the United States and became an associate in the Gambino Family crew which was supervised by John Gambino. Thus, these defendants are clearly alleged to be major participants in the illegal operations of La Cosa Nostra set forth in the ninth superseding indictment. The mere fact that these defendants, to a varying degree, may have played comparatively smaller roles in the alleged criminal activities than other co-defendants does not man-

date severance. *See United States v. Torres*, 901 F.2d at 230.

Moreover, given that each of the moving defendants is alleged to be a member of a single conspiracy,[11] much of the evidence relating to acts of co-defendants would be properly admissible against each of them in a separate trial as acts and statements of co-conspirators in furtherance of the charged conspiracy. *United States v. Nersesian*, 824 F.2d 1294, 1304 (2d Cir.), *cert. denied*, 484 U.S. 958, 108 S.Ct. 357, 98 L.Ed.2d 382 (1987); *accord United States v. Villegas*, 899 F.2d 1324, 1347 (2d Cir.), *cert. denied*, 498 U.S. 991, 111 S.Ct. 535, 112 L.Ed.2d 545 (1990); *United States v. Cunningham*, 723 F.2d 217, 230 (2d Cir. 1983), *cert. denied*, 466 U.S. 951, 104 S.Ct. 2154, 80 L.Ed.2d 540 (1984). Similarly, much of the evidence against co-defendants in the instant case would also be admissible individually against defendants Mannino and Romano in a separate trial with respect to the RICO charge in order to prove the existence and nature of the RICO enterprise and a pattern of racketeering activity on the part of defendants Mannino and Romano, by providing the requisite relationship and continuity of illegal activities. *See United States v. DiNome*, 954 F.2d 839, 843–44 (2d Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 94, 121 L.Ed.2d 56 (1992). Under such circumstances, claims of prejudicial spillover as to these acts and statements of co-defendants must be rejected. *See DiNome*, 954 F.2d at 844 ("spillover" claim rejected where "the evidence in question is relevant to the RICO charges against all defendants and most probably would have been admitted even if defendants had been accorded individual trials").

The defendants requesting severance of their case also argue that severance is necessary due to the addition of the bail jumping charge against John and Joseph Gambino, as well as the publicity that resulted from that incident, which they claim exacerbates the danger of prejudicial spillover. Even assuming that the bail jumping act as well as certain other acts of co-defendants

would not be admissible in the separate trials of defendants Mannino, Romano, and Inzerillo, the Court finds that the introduction of such evidence in a joint trial will not sufficiently prejudice the moving defendants so as to justify separate trials.

The Second Circuit has repeatedly held that " 'differing levels of culpability and proof are inevitable in any multi-defendant trial and, standing alone, are insufficient grounds for separate trials.' " *United States v. Torres*, 901 F.2d at 230 (*quoting U.S. v. Chang An–Lo*, 851 F.2d 547, 557 (2d Cir.), *cert. denied*, 488 U.S. 966, 109 S.Ct. 493, 102 L.Ed.2d 530 (1988)); *United States v. Tutino*, 883 F.2d at 1132; *see also United States v. Nersesian*, 824 F.2d at 1304 ("[t]hat one [defendant's] role in the conspiracy may have been smaller or less central than that of certain other co-conspirators does not mandate a separate trial"); *United States v. Carson*, 702 F.2d at 367 ("the fact that evidence may be admissible against one defendant but not another does not necessarily require severance").

■ In the instant case, the Court has set forth in great detail the substantial reasons which support a joint trial, including the fact that the underlying crime involves a common plan or scheme and defendants have been jointly indicted:

First, the government does indeed have an interest in prosecuting the case in a similar fashion as it was presented to the Grand Jury. Co-conspirators should be tried together whenever feasible. Second, the government and the public have an interest in as quick and efficient a resolution of the charges as possible.... Third, stress on the witnesses will be lessened by minimizing the total number of trials. Keeping the number of times that certain key witnesses must repeat their testimony will also reduce the relative advantage accruing to defendants who are tried at later dates and who can benefit from knowledge of the contents and weaknesses of a witness's testimony.

---

11. All of the moving defendants, with the exception of defendant Inzerillo, are charged in the racketeering conspiracy alleged in Count One.

Defendant Inzerillo is charged in the related narcotics conspiracy alleged in Count Three.

*United States v. Gambino,* 729 F.Supp. 954, 970–71 (S.D.N.Y.1990) (footnote omitted), *aff'd on other grounds,* 968 F.2d 227 (2d Cir.1992). The filing of the ninth superseding indictment, including the addition of a bail jumping charge against Joseph and John Gambino, certainly has not rendered a joint trial inappropriate in the instant case. The Court concludes that these reasons supporting a joint trial clearly outweigh any possible prejudice which defendants may suffer in the instant case by being tried with their co-defendants under the ninth superseding indictment. The potential prejudice in this case is not so substantial as to require severance as to any of these defendants.[12]

■ Finally, defendants Mannino, Romano, and Inzerillo argue that the use of an anonymous jury in the instant case requires their severance from the joint trial. This argument is based on the *erroneous* assumption that, if separate trials were conducted, each of these defendants—Mannino, Romano, and Inzerillo—could not each be subjected to the use of an anonymous jury. These defendants are alleged to have been members and major participants in the illegal activities of the Gambino Crime Family. More specifically, defendants Mannino and Inzerillo are alleged members of John Gambino's crew, and Romano is alleged to be an associate of the Gambino Crime Family aligned with that crew. The reasons stated earlier which support the use of an anonymous jury in the instant case—the seriousness of the crimes charged, the defendants' relationship to the Gambino Crime Family which

has a history of attempting to interfere with the judicial process, and the possibility of trial publicity—would all support the use of an anonymous jury in separate trials involving any of the defendants including Mannino, Romano, and Inzerillo. Under such circumstances, the use of anonymous jury in this joint trial is not a factor supporting severance. Moreover, even if an anonymous jury would be unwarranted in a separate trial involving one or all of these defendants, the Court finds that any potential prejudice resulting from the use of that procedure in particular, or potential prejudice from this joint trial generally, still would not require severance of any of these defendants under the circumstances of this case. As noted earlier, the use of an anonymous jury, with the proper precautionary measures, does not deprive a defendant of a fair trial.

In sum, the Court finds that defendants Mannino, Romano, and Inzerillo have each failed to meet their burden, under Rule 14 of the Federal Rules of Criminal Procedure, of demonstrating that sufficient prejudice will result from the joint trial so as to require severance. Thus, for the reasons stated above,[13] each of their renewed motions for severance under Rule 14 is denied in the instant case, as well as the motion for improper joinder under Rule 8(b).

## VII. JOHN GAMBINO'S MOTION FOR MEDICAL SEVERANCE

Defendant John Gambino also has renewed his medical severance motion pursuant to the Sixth Amendment to the United

---

**12.** To the extent that these defendants also are arguing improper joinder of their cases under Rule 8(b) of the Federal Rules of Criminal Procedure due to the bail jumping charge, *see* Pretrial Motion of Francesco Inzerillo, dated October 29, 1992, at 2, the Court finds such an argument to be similarly without merit. As noted earlier, the bail jumping charge is related, in both time and substance, to the racketeering and narcotics conspiracies alleged in the indictment. In any event, the naming of all the defendants, with the exception of Francesco Inzerillo, in the RICO counts, and the naming of Inzerillo in the related narcotics conspiracy in Count Three, provided the common link in the present case permitting joinder under Rule 8(b). In *United States v. Garcia,* 848 F.2d 1324, 1333

(2d Cir.1988), *rev'd on other grounds,* 490 U.S. 858, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989), the Second Circuit held that joinder of all defendants was proper where multiple conspiracies and RICO offenses were charged, even though some defendants were not named in all of the conspiracy counts.

**13.** To the extent not mentioned above, the Court hereby incorporates the reasoning of its prior decisions denying severance as to these defendants. *See, e.g., United States v. Gambino,* 784 F.Supp. 129 (S.D.N.Y.1992); *United States v. Gambino,* 7S 88 Cr. 919 (PKL), 1990 WESTLAW 96764 (S.D.N.Y. July 3, 1990); *United States v. Gambino,* 729 F.Supp. 954 (S.D.N.Y.1990).

States Constitution and Rule 14 of the Federal Rules of Criminal Procedure. John Gambino argues that his medical disabilities—including a serious heart ailment, problems with depression, and mental difficulties—require a severance in the instant case. The Government opposes this severance.

■ The decision regarding a medical severance is committed to the sound discretion of the trial court. *Bernstein v. Travia,* 495 F.2d 1180, 1182 (2d Cir.1974); *United States v. Knohl,* 379 F.2d 427, 437 (2d Cir.), *cert. denied,* 389 U.S. 973, 88 S.Ct. 472, 19 L.Ed.2d 465 (1967). The leading case setting forth the standards to guide the exercise of that discretion is *United States v. Doran,* 328 F.Supp. 1261, 1263 (S.D.N.Y.1971) (Frankel, J.). In *Doran,* the Court suggested five factors which should be considered in making that decision: (1) the medical evidence; (2) the defendant's activities "outside the courthouse"; (3) the possibility of measures "to minimize the risks to defendant's health in subjecting him to trial"; (4) "the temporary or permanent character of the physical problem, since postponement is a relatively easy, bearable and obvious measure for the case of curable impairments"; and (5) the "magnitude and seriousness of the case— *i.e.,* the degree of loss or injury to the public interest deemed to result from delay or total preclusion of a trial."

The Court has examined these various factors with respect to John Gambino's medical disabilities and finds that a medical severance in the instant case is unwarranted.

A. *The Medical Evidence*

■ The medical evidence regarding John Gambino's condition does not support severance at this time. The medical evidence gathered in 1990 indicates that John Gambino has a serious heart ailment and problems with depression. While it is possible these ailments may require the Court to make allowances during the trial, a severance certainly is not required. With respect to his heart condition, the Government's physician, Dr. Weld, has stated that

John Gambino's stress tests and exercise regimen demonstrate that he is fit enough to stand trial. *See* Report of Dr. Francis Weld, July 10, 1990, at 1 (Annexed as Exhibit A to Affirmation of Assistant United States Attorney James B. Comey, Esq., dated November 10, 1992 ("Comey Affirmation")). While this report was written in 1990, no new medical evidence has been brought to the Court's attention which would suggest otherwise.

It also is argued that John Gambino cannot be tried with the other co-defendants because of certain intellectual problems. His psychiatrist, Dr. Daniel W. Schwartz, has recommended that John Gambino be tried alone because he "cannot possibly function mentally at the same rate of speed or uninterrupted duration as his codefendants" and will be unable to concentrate and "discern which testimony relates to him." Report of Daniel W. Schwartz, M.D., May 8, 1990, at 3 (Annexed as Exhibit H of the Motion of John and Joseph Gambino, dated October 23, 1992). However, the Government neurologist who examined John Gambino reached the conclusion that he is fully capable of being a defendant at a joint trial as long as he is given the opportunity to confer with counsel when necessary. *See* Report of Sidney M. Cohen, M.D., November 30, 1990, at 13 (Annexed as Exhibit C to Comey Affirmation). The Court fails to see how a separate six month trial will alleviate any intellectual difficulties which John Gambino might have given that a separate trial would involve virtually all of the same evidence presented in this trial. Therefore, the Court is aware of no medical evidence, physical or mental, which requires severance in the instant case. Moreover, the Court finds that a hearing on this issue is not required under these circumstances. *See Bernstein v. Travia,* 495 F.2d at 1182.

B. *Activities Outside the Courthouse*

The Government argues that John Gambino's activities in the years subsequent to his 1985 stroke and 1987 heart surgery demonstrate that he is fully capable of standing trial. The Government alleges

that, despite his ailments, John Gambino was able to continue his substantial involvement in the illegal activities of the alleged Gambino Crime Family. Moreover, the Government contends that John Gambino's recent violation of bail in September 1992, during which he fled to Florida, also supports denying the medical severance. *See United States v. Doran*, 328 F.Supp. at 1263; *see also United States v. Brown*, 821 F.2d 986, 989 (4th Cir.1987) (court may consider defendant's activities both inside and outside the courtroom in passing on medical continuance motion).

The Court does not consider John Gambino's activities "outside the courthouse" to be a critical factor in this analysis. However, the Court does give some weight to John Gambino's recent flight as an indication that he can stand trial at this time despite these ailments. In late August, 1992, the Government gave permission to John Gambino to travel to Texas for an appointment with his heart specialist. Mr. Gambino did not appear for this scheduled appointment and, at a hearing on September 1, 1992, the Government reported that his whereabouts were unknown, in violation of his bail conditions. On September 1, 1992, the Court issued an arrest warrant for John Gambino. On September 20, 1992, he was arrested by law enforcement officials in a hotel residence in Florida along with defendant Joseph Gambino. These recent actions by John Gambino clearly undermine his claim that he is unable to stand trial due to his heart ailment.

## C. *Available Protective Measures*

The Court notes that there are protective measures which can be taken to minimize any risk to John Gambino's health without unduly interfering with the progress of the trial. As the Second Circuit has noted in *United States v. Knohl, supra*, the trial court has broad discretion in determining what measures, if any, are appropriate:

> Cases are indeed scarce in which a reviewing court has found an abuse of discretion on the part of a trial judge

who has ruled upon an accused's claim that he was *physically* incompetent to stand trial. The judge's own observation of the accused and the opportunity to adjust the trial itself to needs of one suffering physical disability by shortening court sessions, affording the accused periods of rest and having present medical and nursing aids and attendants as may be needed, give particular cogency to the trial court's estimate of the circumstances and to its disposition of the matter.

*Knohl*, 379 F.2d at 437 (emphasis in original). The Court will deal with any medical problems as they arise and implement reasonable measures to address such problems.[14] The existence of numerous protective measures which could be used, if necessary, to minimize any risk to John Gambino's health during the course of the trial is a factor which clearly supports the denial of a medical severance in this case.

## D. *Usefulness of a Postponement*

The Court finds that a postponement of the trial in the instant case would not, in any way, alleviate any problems which may be created by John Gambino's medical condition. It is extremely unlikely that his chronic heart ailment will improve. Moreover, the ailment could deteriorate during the course of the long delay which would result from a postponement of his trial. Thus, the permanent and incurable nature of the ailment supports denying the medical severance under these circumstances. *See, e.g., United States v. DePalma*, 466 F.Supp. 920, 926 (S.D.N.Y.1979) (denying medical severance motion of two defendants based on heart ailment because, *inter alia*, "[t]o grant the motion on the basis advanced would be to effectively deny the Government a trial of these defendants, who may never be more capable of standing trial").

## E. *Seriousness of the Case*

The final factor in the *Doran* analysis is the magnitude and seriousness of the

---

**14.** Moreover, with respect to John Gambino's intellectual disabilities, the Court, as always, will allow him to confer with his attorney during breaks and recesses in the trial.

crimes charged. *See United States v. Doran*, 328 F.Supp. at 1263 ("We ought to care more—and we do in fact care more—about resolving charges of large-scale crime or of grave crimes than we do about relatively minor individual cases (however troublesome in their total impact)." The ninth superseding indictment charges John Gambino with being a "captain" in a large-scale organized crime association known as the Gambino Crime Family. It is alleged that John Gambino, in connection with this enterprise, committed various acts of racketeering including distribution of narcotics, murder, extortion, loansharking, and illegal gambling.

John Gambino was arrested almost two years ago. In light of the magnitude of the crimes charged, the public clearly has an interest in avoiding any delay or total preclusion of John Gambino's trial on these serious charges. The Court is sensitive to the need to avoid unnecessary delay and disruption to the trial process. Thus, the public interest weighs heavily in favor of denying the severance motion in the instant case.

As the Second Circuit has noted:

Whether a defendant's physical condition is so poor as to require a continuance or severance is not only a difficult determination for a judge to make, but it is one which carries with it the tremendous responsibility of weighing the invariably unpredictable factor of a defendant's health against the Government's, indeed the public's, legitimate interest in a fair and speedy disposition. Troublesome though it may be, however, that decision, as we have repeatedly held, is one reserved to the sound discretion of the district judge.

*Bernstein v. Travia*, 495 F.2d at 1182 (footnote and citations omitted). After careful consideration of the medical evidence with respect to John Gambino's physical and mental ailments and all of the other relevant factors, the Court finds that a medical severance is not required in the instant case. Moreover, the Court has determined that a hearing on this issue is unwarranted under these circumstances. Having

reached this decision, the Court would like to ascertain the type of additional precautionary measures, if any, which should be taken during the course of the trial in order to alleviate any potential problems concerning John Gambino's physical and mental health. However, the Court recognizes that the data compiled in the current record is over two years old. Accordingly, the Court will order that the Government arrange a medical examination of John Gambino, which should be conducted in advance of trial, in order to determine the current status of his mental and physical condition and decide what type of precautionary measures, if any, are warranted during the trial in the instant case.

## VIII. ROMANO'S MOTION TO DISMISS THE RACKETEERING CHARGES

Defendant Romano has moved to dismiss the racketeering counts brought against him (*i.e.* Counts One and Two) because the indictment fails to allege either a pattern of racketeering or any continuity of a pattern against him. In these RICO counts, the Government alleges five acts of racketeering against Romano. Romano argues that the time period separating these acts illustrate that they were random, isolated acts that do not constitute a "pattern" of racketeering and are therefore beyond the reach of the RICO statute.

It is axiomatic that, in a criminal case, a defendant may not challenge a facially valid indictment prior to trial for insufficient evidence. Instead, a defendant must await a Rule 29 proceeding or the jury's verdict before he may argue evidentiary insufficiency. *See Costello v. United States*, 350 U.S. 359, 363, 76 S.Ct. 406, 408, 100 L.Ed. 397 (1956) ("[a]n indictment returned by a legally constituted and unbiased grand jury ..., if valid on its face, is enough to call for trial of the charge on the merits") (footnote omitted); *United States v. Massino*, 605 F.Supp. 1565, 1581 (S.D.N.Y.1985) ("[a] motion to dismiss for insufficient evidence can be decided only at trial, after the government has been put to its test, not before trial, based merely on assumptions of what the government's

proof will be"), *rev'd in part on other grounds*, 784 F.2d 153 (2d Cir.1986); *United States v. Cafaro*, 480 F.Supp. 511, 520 (S.D.N.Y.1979) ("It would be premature to dismiss an indictment based on a claim of insufficient evidence.... An indictment, valid on its face and returned by a properly constituted grand jury, is sufficient to require trial of the charge on the merits.").

■ In the instant case, the indictment clearly alleges that Romano participated in a pattern of racketeering activity and alleges that at least two acts by him constituted that pattern. Since the indictment is facially valid, Romano's motion to dismiss the RICO counts, based upon insufficient evidence of a pattern, is premature. Accordingly, Romano's motion to dismiss is denied without prejudice and with leave to renew at the close of the Government's case.

### IX. ROMANO'S MOTION *IN LIMINE* TO PRECLUDE EVIDENCE RELATING TO THE EXISTENCE OF A NARCOTICS CONSPIRACY

Defendant Romano also seeks to bar the Government from offering proof of his involvement in certain narcotics transactions apart from the specific narcotics racketeering acts alleged in Counts One and Two. While Romano is not charged in the narcotics conspiracy alleged in Count Three, he is named as a co-conspirator. According to the indictment, the Government plans to introduce evidence of Romano's alleged participation in narcotics trafficking in the years 1982 and 1987, as well as certain items of physical evidence recovered during a search of his business premises at Concord Furniture on March 31, 1988, and a telephone conversation between Romano and his employee and relative, Salvatore D'Amico, on May 24, 1988.[15]

Romano argues that his alleged participation in an uncharged narcotics conspiracy is not relevant to the racketeering charges against him in Counts One and Two. Romano contends that this evidence concerning the narcotics conspiracy simply

is being used to bolster the racketeering charges against him. The Court finds this argument to be without merit. In *United States v. Bagaric*, 706 F.2d 42 (2d Cir.), *cert. denied*, 464 U.S. 840, 104 S.Ct. 133, 78 L.Ed.2d 128 (1983), the defendant argued that the district court improperly admitted evidence of an act not alleged in the indictment as one of the predicate acts of racketeering. The Second Circuit held that "[i]t is clear the Government may offer proof of acts not included within the indictment, as long as they are within the scope of the conspiracy." *Id.* at 64 (*citing United States v. Cohen*, 518 F.2d 727, 733 (2d Cir.), *cert. denied*, 423 U.S. 926, 96 S.Ct. 270, 46 L.Ed.2d 252 (1975)); *see also United States v. Towne*, 870 F.2d 880, 886 (2d Cir.), *cert. denied*, 490 U.S. 1101, 109 S.Ct. 2456, 104 L.Ed.2d 1010 (1989). Applying this principle, the Court found that the evidence was properly admitted "as proof of [the defendant's] membership in the racketeering enterprise, and was clearly relevant to the alleged acts of racketeering." *Id.*

■ Even though Romano is not included as a defendant in the narcotics conspiracy charged in Count Three, his participation in that conspiracy clearly is relevant to the racketeering charges brought against him in Counts One and Two. Romano is charged in Counts One and Two with having been a long-term participant in a racketeering enterprise, which was involved in a massive narcotics trafficking operation. Defendant Romano cannot limit the Government's proof to the enumerated racketeering acts set forth in Counts One and Two; rather, the Government, in order to avoid Rule 29 dismissal, is entitled to use these other acts to prove that his membership in the racketeering enterprise, as well as to show that the racketeering acts were not isolated incidents. The acts relating to Romano in Count Three are within the scope of the alleged RICO conspiracy charged against Romano in Count One and are relevant to the racketeering acts charged in both Counts One and Two. The

---

**15.** While the Government argues that the motion is premature, the Court, for purposes of the motion *in limine*, will assume that the Government will be offering proof at trial of these acts alleged in the indictment.

Court therefore denies the motion *in limine* to exclude the evidence relating to Romano's alleged involvement in the narcotics conspiracy alleged in Count Three.[16]

## CONCLUSION

For the reasons stated above, the Court grants the Government's motion for an anonymous jury and hereby orders that: (1) *voir dire* of prospective jurors should be limited so that a venireman's name, address, and name of employer or place of employment is not disclosed; (2) during trial, the jurors should be kept together during recesses and taken to lunch as a group each day by the United States Marshal's Service; and (3) at the end of each trial day, the jurors should be transported together by the United States Marshal's Service from the courthouse to an undisclosed central location, from which they can leave for their respective communities.

The pretrial motions brought by the moving defendants are denied in their entirety. First, the following motions brought by defendants John and Joseph Gambino are denied: (1) the motion to suppress the evidence resulting from the electronic surveillance at the Ravenite Social Club in Manhattan; (2) the demand for a bill of particulars; (3) a renewed demand for *Brady* materials; (4) the motion for severance of the bail jumping charge; and (5) the motion for medical severance of John Gambino's trial.

Second, the Court denies defendant Mannino's motion to sever his trial and his demand for a bill of particulars.

Third, the Court denies defendant Inzerillo's motion to sever his trial and his demand for a bill of particulars.

Fourth, the Court denies defendant Romano's motions to: (1) dismiss the racketeering charges against him; (2) motion *in limine* to preclude evidence relating to Romano's alleged participation in an uncharged narcotics conspiracy; and (3) motion to sever his trial.

Moreover, to the extent that the individual defendants have joined in the motions made by all other co-defendants, those motions similarly are denied for the reasons stated above.

Finally, the Court orders that the Government conduct a mental and physical examination of defendant John Gambino to update his condition and assist the Court in determining what precautionary measures, if any, the Court should take during the course of the trial with respect to John Gambino's mental and physical health.

SO ORDERED

---

16. However, the Court's denial of the motion is without prejudice to its renewal at the time the evidence is offered when Romano can, once again, argue that the evidence is not within the scope of the charged enterprise or raise other concerns including Rules 403 or 404(b) objections under the Federal Rules of Evidence. The Court will reconsider its *in limine* ruling in light of the evidence offered at trial.